J-S47028-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CESAR ANTONIO REYES | : | |
| | : | |
| Appellant | : | No. 175 MDA 2020 |

Appeal from the Judgment of Sentence Entered December 17, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0002342-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CESAR ANTONIO REYES | : | |
| | : | |
| Appellant | : | No. 176 MDA 2020 |

Appeal from the Judgment of Sentence Entered December 17, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0004974-2019

BEFORE:   STABILE, J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED MARCH 26, 2021**

Appellant Cesar Antonio Reyes appeals from the judgment of sentence imposed following his convictions for theft by unlawful taking, receiving stolen property (RSP), stalking, and two counts of witness intimidation.[1]  Appellant

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3921(a), 3925(a), 2709.1 (a)(2), 4952 (a)(3), and (a)(2), respectively.

raises several claims related to the trial court's evidentiary rulings, severance, the weight and sufficiency of the evidence, and his sentence. We affirm.

The trial court summarized the facts and procedural history of this matter as follows:

On January 7, 2019, Pablo Ramos asked [Appellant] for a ride to the Queen of Angels Apartments in Muhlenberg Township, Berks County. The men were part of the same social circle and attended the same treatment clinic. Ramos had received a letter about an available apartment he applied for, but Ramos did not drive. [Appellant] agreed to drive Ramos. [Appellant] parked outside Queen of Angels and went inside with Ramos.

At the same time[,] Queen of Angels Apartment Manager, Jeannine English, was busy processing tenants' payments in her office on the ground floor of the building around 10:30 a.m. English was startled to see [Appellant] standing directly over her desk, having entered without knocking. English quickly tried to collect herself and conceal private tenant information. She placed the checks and money orders into an envelope and placed the envelope on the left side of her desk.

Ramos stayed in the hallway, leaving [Appellant] alone in the office with English. English and [Appellant] talked about whether he might qualify for a room, including whether he fell below income cap. [Appellant] was elusive and gave inconsistent answers.

English explained to [Appellant] that she had a guide that, "would be really beneficial to him and would help him get organized and he really needed to get a handle on what his gross income number was, whether that was his income alone or whether income included his girlfriend." As a courtesy, English decided to give [Appellant] a housing brochure/guide that details low income housing options. To make the copy[,] English had to walk across her office and turn her back to [Appellant] and her desk. It took her one or two minutes to copy the double-sided document. As soon as English handed him the copy, [Appellant] said goodbye and left without any further discussion.

Ramos then stepped into the office doorway for a moment, said he forgot his letter and application information, and left the

building with [Appellant]. On the drive back home, [Appellant] showed Ramos an envelope and admitted taking it from on top of English's desk.

English realized the payments were missing shortly after [Appellant] left the building. After an exhaustive search of the entire office—including filing cabinets she knew she had not opened and the trash bins—English called the Muhlenberg Township police. The payments, totaling $11,334, were never redeemed, cashed, or recovered. Surveillance video from the Queen of Angels lobby shows [Appellant] entering and leaving English's office.

On February 28, 2019, a criminal complaint was filed, charging [Appellant] with theft by unlawful taking and [RSP]. On May 20, 2019, the charges against [Appellant] were waived for court. On October 7, 2019, the court entered an order[ ] scheduling the case for a jury trial on November 13, 2019, with a back-up date of December 9, 2019. The Commonwealth called a different case on November 13, 2019, thereby rescheduling [Appellant's] trial for December 9, 2019.

[Appellant] ran into Ramos outside the courthouse after trial was continued. [Appellant] approached Ramos and displayed a photo on his phone of the sworn statement Ramos gave to Officer Ramon Caraballo. [Appellant] asked Ramos to retract his statement and say, "that I had [made this statement] because [Appellant] kicked my lady out of the house and that I was not thinking straight.

On November 15, 2019, Ramos contacted the affiant in the theft action, Officer Caraballo, and told him that for each of the past three days (beginning November 13, the original trial date) [Appellant] approached him and tried to intimidate him into changing his testimony or not showing for trial. A witness corroborated Ramos' allegation, and Officer Caraballo watched video of [Appellant] approaching Ramos inside the clinic and talking on November 15th.

The same day, November 15, 2019, Officer Caraballo filed a criminal complaint charging [Appellant] with stalking and intimidation of a witness. The Information covers [Appellant's] conduct over a three-day period (November 13-15). [Appellant] was arrested November 19, 2019. He waived his preliminary hearing on November 25, 2019 and the charges were held for court.

On Wednesday, December 4, 2019, the Commonwealth filed a notice to consolidate the theft and intimidation of witness dockets. Trial in the theft case was scheduled to take place the following Monday[, on December 9, 2019.] [Appellant] filed a motion to sever the dockets on December 5, 2019. The [c]ourt heard and denied [Appellant's] motion to sever on December 9, 2019, and the cases proceeded to a consolidated jury trial.

Following a two-day jury trial[,] [Appellant] was found guilty on all counts, and on December 17, 2019 the court sentenced [Appellant] to an aggregate prison term of 21 to 60 months.[2]

Trial Ct. Op., 6/26/20, 1-8 (some formatting altered).

Appellant filed a post-sentence motion, which the trial court denied. Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement at each trial court docket number. The trial court issued a Rule 1925(a) opinion briefly addressing the sufficiency of the evidence, but noting that Appellant waived his sufficiency claims by failing to comply with Pa.R.A.P. 1925(b)(4)(ii).

On appeal, Appellant raises the following issues, which we have reordered as follows:

1. Whether the Commonwealth presented sufficient evidence to the alleged offenses beyond a reasonable doubt, pertaining to the charges of theft by unlawful taking, receiving stolen property as well as stalking and intimidation of witnesses.

2. Whether the trial court abused its discretion when it permitted guilty verdicts that were against the weight of the evidence,

---

[2] Specifically, the trial court sentenced Appellant to twelve to thirty-six months' incarceration for theft and nine to twenty-four months' incarceration for stalking, to be served consecutively. The trial court also imposed a concurrent term of twelve to twenty-four months' incarceration for witness intimidation. All three sentences were within the standard guideline range for the offenses.

- 4 -

particularly verdicts that were wholly reliant on circumstantial, inconsistent, and vacuous evidence.

3. Whether the trial court abused its discretion when it permitted the Commonwealth to consolidate its cases against Appellant for trial, when additional evidence proved substantially prejudicial against Appellant and not based on the same incident or conspiracy.

4. Whether the trial court misapplied the law when it permitted evidence not relevant to the proceeding—notably testimony about the businesses' elderly and disabled clientele—and that evidence was not harmless error.

5. Whether the trial court entered an illegal sentence when it sentenced Appellant on a felony-three theft, and ran another offense consecutive, when the evidence supported a lesser-graded offense.

6. Whether the trial court's sentence of twelve (12) to thirty six (36) months['] incarceration and order to pay two-thousand eighty-two U.S. dollars ($2,782.00) in restitution, which was followed by nine (9) months to twenty four (24) months in a state correctional institution was manifestly unjust and unreasonable, considering Appellant suffers from life-threatening immunosuppressant disease and was sole caretaker for his long-term girlfriend and elderly mother; as well as the court's use of an improper offense gravity score that resulted in a compromise of the sentencing process.

Appellant's Brief at 19-21 (some formatting altered).

**Sufficiency of the Evidence**

Initially, we note that Appellant included a sufficiency claim in both of his Rule 1925(b) statements. In the theft case, Appellant claimed that there was insufficient evidence because the Commonwealth "failed to show that [he] unlawfully took or exercised unlawful control over the rental payments with intent to permanently deprive Queen of Angels Apartment." *See* Rule 1925(b) Statement (Theft Case), 1/24/20, at 2. In the stalking case, Appellant also

claimed that there was insufficient evidence for stalking because (1) the Commonwealth failed to prove a course of conduct; and (2) the Commonwealth did not show intent. *See* Rule 1925(b) Statement (Stalking Case), 1/24/20, at 2. Appellant also challenged the sufficiency of the evidence for witness intimidation, claiming that (1) the Commonwealth failed to establish intent, (2) the Commonwealth failed to prove that Appellant intimidated or attempted to intimidate Ramos into providing misleading information or testimony; and (3) the Commonwealth failed to prove that Appellant intimidated or attempted to intimidate Ramos into withholding testimony. *See id.* at 2.

The trial court initially noted that Appellant failed to comply with the specificity requirements of Rule 1925(b) by challenging the sufficiency of the evidence "without any reference to specific testimony or other evidence from trial to support his claim." *See* Trial Ct. Op. at 14; Pa.R.A.P. 1925(b)(4)(ii) (noting that an appellant "shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge," but "[t]he judge shall not require the citation to authorities or the record . . ."). Nevertheless, the trial court addressed the sufficiency of the evidence supporting Appellant's convictions in its Rule 1925(a) opinion. In any event, because it appears that Appellant's Rule 1925(b) statement adequately preserved his instant claims, we will briefly address them.

<u>Theft Case</u>

Appellant first challenges the sufficiency of the evidence supporting his theft convictions. Appellant contends that "no person witnessed Appellant take the envelope" containing the rent checks and "[a]t no time was Appellant apprehended in possession of the rental payments nor did evidence exist showing he attempted to cash them or benefit to the tune of $11,344.00."[3] *Id.* at 67. Further, Appellant contends that there were equally plausible explanations for the missing checks, including "(1) Ms. English simply losing the envelope herself and benefiting from the proceeds herself; (2) someone else took it; and (3) Mr. Ramos took it and lied for some other reason about having seen the envelope in Appellant's possession." *Id.* Appellant argues that "[s]ince the testimony presented by the Commonwealth to establish Appellant's guilt is at least equally consistent with Appellant's innocence, there is insufficient evidence to sustain [his] conviction[s]." *Id.* at 58.

The Commonwealth responds that "[d]espite Appellant's assertions, there was clear evidence that Appellant stole the envelope of checks off Ms. English's desk, tucked it into a sweatshirt, and walked out of the building." Commonwealth's Brief at 21. Specifically, the Commonwealth refers to testimony from Ms. English, video surveillance footage, and testimony from Ramos, who stated that Appellant "showed him the envelope" containing the stolen checks after Appellant and Ramos were back in the car. *Id.* at 22. The

---

[3] Appellant's sufficiency claim is based, in part, on the trial court's valuation of the theft under 18 Pa.C.S. § 3903(c)(2)(i), which increased the grading of the offense to a felony. However, because we address that argument below, we do not discuss it here.

Commonwealth also asserts that the "jury could reasonably infer that Appellant intended to permanently deprive Queen of Angels of their rent checks based on the secretive circumstances of their taking." *Id.* Further, the Commonwealth adds that "there is simply no evidence to support any inference that Appellant would have returned them." *Id.* Therefore, the Commonwealth asserts that "even before considering the intimidation as consciousness of guilt, or the inconsistencies in Appellant's own testimony about the events at the Queen of Angels, [the evidence] is more than sufficient for a jury to convict Appellant" of theft. *Id.*

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted).

- 8 -

Here, the trial court concluded that there was sufficient evidence to support Appellant's theft convictions based on the testimony from Ramos and Ms. English. **See** Trial Ct. Op. at 13. We agree. Therefore, we affirm on the basis of the trial court's conclusion on this issue. We add that, to the extent Appellant asserts that there were alternative explanations for the missing rental checks, that claim does not warrant relief. **See id.** (reiterating that the Commonwealth's case "need not preclude every possibility of innocence").

<u>Stalking/Witness Intimidation Case</u>

Appellant also challenges the sufficiency of the evidence supporting his convictions for stalking and witness intimidation. With respect to stalking, Appellant contends that his conversations with Ramos "individually or collectively do not rise to the level of causing harassment or causing substantial emotional distress," nor was there any testimony from Ramos that he suffered "great concern or alarm." Appellant's Brief at 78. As to witness intimidation, Appellant contends that there was no testimony that "Appellant asked [Ramos] to change or withhold testimony in this case." **Id.** at 80. Therefore, Appellant concludes that the evidence was insufficient to establish his convictions for either offense. **Id.**

Here, following our review of the record, the parties' briefs, and the well-reasoned conclusion of the trial court, we affirm on the basis of the trial court's analysis of this issue. **See** Trial Ct. Op. at 13 (noting that Ramos testified that he was in fear of Appellant, who approached him multiple times and attempted

to prevent him from participating in the Commonwealth's case). Therefore, Appellant is not entitled to relief on this claim.

## Weight of the Evidence

Appellant also argues that his convictions were against the weight of the evidence.

With respect to the theft convictions, Appellant asserts:

> There are numerous inconsistencies with the different versions of events as told by Ms. English, Mr. Ramos, and Det. Caraballo. Ms. English provided additional details not supported by Det. Caraballo's testimony or Mr. Ramos's. Mr. Ramos's testimony also is not supported by the testimony of other Commonwealth witnesses with respect to material details. Notably, Mr. Ramos's testimony is the least credible of all the Commonwealth's witnesses, and he's directly contradicted by Appellant's version of events and insistent denial of taking anything from Queen of Angels.

Appellant's Brief at 88. As to stalking and witness intimidation, Appellant argues that "Ramos's allegations were not corroborated by any testimony or additional evidence. His credibility throughout the proceeding was contradicted by Commonwealth and Appellants' witnesses." *Id.* at 89. Therefore, Appellant concludes that "[t]he testimony presented by Mr. Ramos and Ms. English should so offend this Court's sensibilities that it should reverse and remand for a new trial." *Id.*

The Commonwealth responds that the trial court properly denied Appellant's challenge to the weight of the evidence, as it was the jury's prerogative to weigh the credibility of the witnesses' testimony.

Commonwealth's Brief at 35. Therefore, the Commonwealth argues that Appellant is not entitled to relief. *Id.*

"The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some the evidence and to determine the credibility of the witnesses." *Commonwealth v. Roane*, 204 A.3d 998, 1001 (Pa. Super. 2019) (citation omitted).

Further, we have explained that

[a] new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (quotation marks and citations omitted).

Finally, we note that when a weight claim "is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009) (citation omitted).

Here, Appellant filed a post-sentence motion preserving his challenge to the weight of the evidence, which the trial court rejected. In it's Rule 1925(a) opinion, the trial court noted that "[t]he jury obviously believed the Commonwealth's witnesses, and the verdicts are not so contrary to the evidence as to shock one's sense of justice." *See* Trial Ct. Op. at 15.

Our review of the record confirms that, other than challenging the credibility of the witnesses based on alleged "inconsistencies" in their trial testimony, Appellant did not specify how the witness testimony was so vague or tenuous that the verdict shocks one's sense of justice or the conscience of the court. As noted by the trial court, the jury was free to assess the credibility of the Commonwealth's witnesses in rendering its verdict, and we will not disturb that credibility determination on appeal. *See Gonzalez*, 109 A.3d at 723; *see also Gibbs*, 981 A.2d at 282. Therefore, we discern no abuse of discretion by the trial court in denying Appellant's claim. *See Gonzalez*, 109 A.3d at 723. Further, to the extent Appellant invites this Court to re-weigh the evidence presented at trial, that is not the role of our appellate review. *See Gibbs*, 981 A.2d at 282. Accordingly, Appellant is not entitled to relief.

**Motion to Sever**

Appellant next argues that the trial court erred in denying his motion to sever the stalking and witness intimidation charges from the original charges of theft and RSP. Appellant's Brief at 49. Specifically, Appellant claims that the evidence of the stalking and witness intimidation charges would not have been not admissible in a separate trial for the theft charges, as "the evidence

- 12 -

of stalking/intimidation was so far removed in time from the theft offense that it failed to show state of mind or intent of [A]ppellant at the commission of the crime being tried." *Id.* at 50. Appellant contends that "[w]ith a nearly 11-month gap, the [trial c]ourt and jurors are left confounded or even worse left speculating as to Appellant's state of mind at the time of the alleged theft." *Id.* Further, Appellant contends that the cases had different victims, as the theft case involved Queen of Angels, a housing complex, while the stalking/intimidation case involved Ramos, and that "[t]he two cases also do not share any issues of law or similar facts." *Id.* Appellant also claims that "[a]s a result of this consolidation, the jury heard additional evidence of Appellant's bad acts and found him guilty on all counts" and therefore suffered undue prejudice. *Id.* at 50-51.

The Commonwealth responds that the trial court properly denied Appellant's motion to sever, as "[t]he two incidents were easily distinguishable by the jury, and the evidence presented was not so prejudicial that it was likely to result in a guilty verdict based on something other than proper consideration of the evidence." Commonwealth's Brief at 39. The Commonwealth further asserts that the evidence of each offense would have been admissible at the trial on the other offenses and that, had the trial court granted the severance motion, "each trial would have ended up looking remarkably similar, as the same incidents would have been talked about in both trials." *Id.* Finally, with respect to prejudice, the Commonwealth asserts that "although evidence of the fact that [Appellant] attempted to intimidate a

witness against him into changing his story or not showing at all is 'bad' for Appellant, there is no prejudice of the type necessary" to demonstrate that the trial court abused its discretion. ***Id.***

"Joinder and severance of separate indictments for trial is a discretionary function of the trial court; consequently, the trial court's decision is subject to review for abuse of that discretion." ***Commonwealth v. Brookins***, 10 A.3d 1251, 1255 (Pa. Super. 2010). "The critical consideration is whether the appellant was prejudiced by the trial court's decision not to sever. The appellant bears the burden of establishing such prejudice." ***Commonwealth v. Dozzo***, 991 A.2d 898, 901 (Pa. Super. 2010) (citation omitted and some formatting altered).

> Where the defendant moves to sever offenses not based on the same act or transaction . . . the court must . . . determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*   *   *

> "Evidence of crimes other than the one in question is not admissible solely to show the defendant's bad character or propensity to commit crime." ***See*** Pa.R.E. 404(b)(1) . . . . Nevertheless:

> [E]vidence of other crimes is admissible to demonstrate (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) the

- 14 -

identity of the person charged with the commission of the crime on trial. Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts.

**Brookins**, 10 A.3d at 1256 (some citations omitted).

Here, at the pretrial hearing, the trial court explained its reasons for denying Appellant's motion to sever as follows:

Under the law, there is no doubt that [the evidence in each case] would be admissible during the course of [trial in the] other because you have to have testimony that the only reason that [Appellant] intimidated this gentleman is because there was a pending matter. It seems to me that 12 reasonable people could discern one case from the other, so I don't really think that it would be so complicated that it would confuse the jury. I mean, [Appellant is] charged with telling someone not to testify in [the theft] case, although it is months and months later. . . . And I also don't think that he would be prejudiced by this because it's going to come out in the trial anyway.

N.T. Trial, 12/9/19, at 10.

Based on our review of the record, we discern no abuse of discretion by the trial court. **See Brookins**, 10 A.3d at 1255-56; **Dozzo**, 991 A.2d at 901. As discussed previously, the stalking and witness intimidation charges arose from Appellant's efforts to prevent Ramos from testifying in the theft case. As such, the evidence in each case would be admissible at a separate trial for the other. **See Brookins**, 10 A.3d at 1255-56. Further, given that the matters are easily separable by the jury, there was no danger of confusion. **See id.** Finally, Appellant failed to demonstrate the potential for undue prejudice based on the joint trial. **See id.** Therefore, the trial court properly denied

- 15 -

Appellant's motion to sever. *See* Pa.R.Crim.P. 582(A)(2), 583; *see also Brookins*, 10 A.3d at 1255-56. Accordingly, Appellant is not entitled to relief.

**Ms. English's Testimony**

Appellant next claims that the trial court erred in allowing Ms. English to testify about the type of housing offered at Queen of Angels, as it was "not only irrelevant to the underlying allegations but also extremely prejudicial." Appellant's Brief at 32. Specifically, Appellant refers to Ms. English's testimony that the property caters to "elders that are 62 and above who meet the criteria for low income housing, which means they qualify for rent subsidy . . . and that certain complexes are designed predominantly for seniors and younger adults with handicapped disabilities." *Id.* at 54-55. Appellant argues that the "details elicited by the Commonwealth suggested to the jury that Appellant was someone who preyed upon the elderly and disabled, who are some of the most vulnerable members of the community." *Id.* at 55. Appellant concludes that "the prejudicial impact of the irrelevant testimony was fatally prejudicial." *Id.* at 56.

The Commonwealth responds that Ms. English's testimony "was relevant because it explains the nature of her interaction with Appellant and it tells the complete story of the theft." Commonwealth's Brief at 41. Further, the Commonwealth contends that although the residents are "vulnerable members of the community, there is no requirement that the judge sanitize unpleasant facts for the jury." *Id.* In any event, the Commonwealth asserts that any potential error in the trial court's ruling was harmless, as there was

- 16 -

overwhelming evidence to establish Appellant's guilt for the charged offenses.

*Id.* at 42. Therefore, even if the trial court erred in allowing Ms. English to testify about the type of residents at Queen of Angels, the Commonwealth concludes that "it could not possibly have contributed to the verdict." *Id.*

In reviewing a challenge to the admissibility of evidence, our standard of review is as follows:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa. Super. 2014) (citations omitted and formatting altered).

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa. Super. 2015) (*en banc*) (citation omitted).

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

- 17 -

***Commonwealth v. Danzey***, 210 A.3d 333, 342 (Pa. Super. 2019) (citation and quotation marks omitted), *appeal denied*, 219 A.3d 597 (Pa. 2019).

However, our Supreme Court has emphasized that "[e]vidence will not be prohibited merely because it is harmful to the defendant." ***Commonwealth v. Dillon***, 925 A.2d 131, 138–39 (Pa. 2007). "[E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." ***Commonwealth v. Page***, 965 A.2d 1212, 1220 (Pa. Super. 2009) (citation omitted).

Here, the trial court addressed Appellant's claim as follows:

Residency at Queen of Angels is generally restricted to very low-income persons who are at least 62 years old or have a qualifying disability. The Commonwealth alleged that [Appellant] took an envelope containing thirty-eight uncashed rental checks from on top of [Ms.] English's desk. English is the Queen of Angels Apartment Manager, and she maintains an office on the first floor.

English testified that she was entering the monthly payments into the apartment's records when [Appellant] entered her office without knocking. English and [Appellant] engaged in a conversation about whether he qualified for housing at Queen of Angels. [Appellant] told English that he was under 62 but had a disability. [Appellant] could not provide enough financial information to determine whether he qualified, so English made him a copy of a guide that, "detail[s] low income housing options." The Commonwealth argued to the jury that [Appellant] took the envelope while English was across the office copying the housing guide, with her back to the [Appellant] and her desk.

The entire discussion between the two, and the reason English left her desk and turned her back to [Appellant], centered on figuring out whether [Appellant] was a qualifying "low-income" person. The fact that Queen of Angels provides housing for low-income persons tends to make English's testimony about copying a low

- 18 -

income housing guide more probable than it would be without knowing that.

Trial Ct. Op. at 8-9.

Based on our review of the record, we discern no abuse of discretion or error of law in the trial court's ruling. *See Belknap*, 105 A.3d at 9-10. As noted by the trial court, Ms. English's testimony was relevant to establish the facts surrounding the theft. Further, there is no indication that Ms. English's testimony was "so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *See Page*, 965 A.2d at 1220. Therefore, Appellant is not entitled to relief.

**Grading of Theft Offense**

Appellant next claims that the trial court erred in grading the theft conviction as a third-degree felony, rather than a third-degree misdemeanor. Appellant's Brief at 83. Appellant contends that although the checks and money orders had a face value of $11,344, they were made out to Queen's Angels and, therefore, they "had no value to him." *Id.* at 33. Appellant continues that, because he did not have the ability to cash the checks, they were worth "no more than the paper on which they were printed[,] and the Commonwealth did not introduce any evidence to the contrary." *Id.* Further, although Appellant acknowledges that the jury found specifically found that the value of the stolen checks exceeded $2,000, he asserts that "there was legally insufficient evidence, specifically no evidence at all, to support the jury's finding that the purloined rental payments were worth anything at all,

let alone [more than] $2,000." *Id.* at 62-63. As such, Appellant concludes that the theft offense should have been graded as a misdemeanor. *Id.* at 34.

The Commonwealth responds that it presented sufficient evidence to establish the felony grading based on testimony from Ms. English and an exhibit that listed the value of each check. Commonwealth's Brief at 24. Based on that evidence, the Commonwealth asserts that "it was legally appropriate for the jury to use the amount written on the checks and money orders to find the value of the theft." *Id.* at 23 (relying on 18 Pa.C.S. § 3903 (c)(2)(i)). Further, the Commonwealth adds that Appellant's ability to cash the checks, "and thereby receive the cash value of the various instruments, is not an element of the crime." *Id.* at 24. Therefore, the Commonwealth argues that Appellant is not entitled to relief.

An error in the grading of an offense implicates the legality of a sentence. *Commonwealth v. Sanchez*, 848 A.2d 977, 986 (Pa. Super. 2004). "[T]he determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary." *Commonwealth v. Williams*, 868 A.2d 529, 532 (Pa. Super. 2005) (citation omitted).

Section 3903 of the Crimes Code governs the grading of theft offenses and provides, in relevant part, as follows:

> **(a.1) Felony of the third degree.**—Except as provided in subsection (a) or (a.2), theft constitutes a felony of the third degree if the amount involved exceeds $2,000, or if the property stolen is an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle, or in the case of theft by receiving stolen

property, if the receiver is in the business of buying or selling stolen property.

\* \* \*

**(b) Other grades.—**Theft not within subsection (a), (a.1) or (a.2), constitutes a misdemeanor of the first degree, except that if the property was not taken from the person or by threat, or in breach of fiduciary obligation, and:

(1) the amount involved was $50 or more but less than $200 the offense constitutes a misdemeanor of the second degree; or

(2) the amount involved was less than $50 the offense constitutes a misdemeanor of the third degree.

**(c) Valuation.—**The amount involved in a theft shall be ascertained as follows:

\* \* \*

(2) Whether or not they have been issued or delivered, certain written instruments, not including those having a readily ascertainable market value such as some public and corporate bonds and securities, shall be evaluated as follows:

(i) The value of an instrument constituting an evidence of debt, such as a check, draft or promissory note, shall be deemed the amount due or collectible thereon or thereby, such figure ordinarily being the face amount of the indebtedness less any portion thereof which has been satisfied.

\* \* \*

(3) When the value of property cannot be satisfactorily ascertained pursuant to the standards set forth in paragraphs (1) and (2) of this subsection its value shall be deemed to be an amount less than $50.

18 Pa.C.S. § 3903(a.1), (b), (c).

Further, this Court has held that in order to increase the grading of a theft offense, the Commonwealth must "present the jury with the essential questions necessary" from which they can determine the dollar amount of the theft beyond a reasonable doubt. *Commonwealth v. Nellom*, 234 A.3d 695, 704 (Pa. Super. 2020) (discussing *Apprendi v. New Jersey*, 530 U.S. 466, (2000)).

> Here, the trial court addressed Appellant's claim as follows:

> The Commonwealth presented evidence that the sum of the thirty-eight rent payments was $11,334. The jury made a specific finding regarding the amount of the stolen property, and it indicated on the verdict sheet that it "found beyond a reasonable doubt" that the amount was $11,334. [Appellant's] conviction for [RSP] merged with theft by unlawful taking at sentencing and was dismissed.

> [Appellant's] focus upon the fact that the checks and money orders had not yet been cashed when he took them from English's desk is misplaced. . . . [Appellant's] suggestion that an uncashed check or money order is of no value cannot be squared with the language of subsection 3903(c)(2), which specifically addresses checks and other written instruments . . . .

> Thus, the jury could properly find that the value of the stolen checks and money orders was $11,334, and the court did not err in grading [Appellant's] theft by unlawful taking as a felony of the third degree at sentencing.

Trial Ct. Op. at 10-11.

Based on our review of the record, we agree with the trial court that there was sufficient evidence to establish that the value of the stolen property exceeded $2,000 for purposes of grading Appellant's theft conviction as a third-degree felony. *See Nellom*, 234 A.3d at 695. Further, the fact that

Appellant did not attempt to cash the checks does not affect the valuation of the theft.  *See* 18 Pa.C.S. § 3903(c)(2)(i); *see also Commonwealth v. Lee*, 434 A.2d 1182, 1184 (Pa. 1981) (rejecting an appellant's claim that "a forged check is not a legal claim to money and, hence, of no value" and concluding that the "argument cannot be squared with the language of the statute controlling the grading of thefts, which specifically addresses checks and other written instruments").  Therefore, Appellant's claim is meritless.

## Discretionary Aspects of Sentence

In his final claim, Appellant argues that the trial court imposed an excessive sentence and failed to consider mitigating factors.  Appellant's Brief at 92.  Specifically, Appellant contends that the trial court failed to "adequately consider Appellant's mental health, dire health concerns, current family situation, or future plans." *Id.* at 39.  Further, he asserts that "he should have been given a chance at electronic monitoring or in the alternative then confinement and supervision at a county level." *Id.*  Under these circumstances, Appellant asks this Court to vacate his sentence and remand for resentencing.[4]  *Id.*

The Commonwealth responds that the trial court properly considered the relevant sentencing factors when fashioning Appellant's sentence.

---

[4] Appellant also reiterates his earlier claim that the trial court imposed an illegal sentence because there was insufficient evidence to establish that his theft conviction was a third-degree felony.  *Id.*  However, as noted previously, Appellant is not entitled to relief on this issue.

Commonwealth's Brief at 50. In addition to reviewing a PSI report, the Commonwealth notes that counsel provided extensive background information about Appellant and also presented testimony from Appellant's girlfriend. *Id.* at 51. The Commonwealth contends that "[g]iven the extensive information provided from multiple sources describing the factors Appellant feels justify mitigation . . . there is no legitimate basis to believe that the trial court did not weigh those factors[.]" *Id.* at 52. Therefore, the Commonwealth argues that "the trial court did not manifestly abuse its discretion in imposing standard range sentences." *Id.* at 52-53.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citation omitted). Rather, before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether [the a]ppellant preserved his issues; (3) whether [the a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the [S]entencing [C]ode.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citation omitted).

"To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised

- 24 -

for the first time on appeal." ***Commonwealth v. Malovich***, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Battles***, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Grays***, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

Here, Appellant filed a timely notice of appeal, preserved his issue in a post-sentence motion, and included a concise statement of the reasons relied upon for allowance of appeal in his brief. ***See Corley***, 31 A.3d at 296; ***Malovich***, 903 A.2d at 1251. Further, Appellant's claim raises a substantial question for our review. ***See Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (holding that an excessive sentence claim, together with an assertion that the court failed to consider mitigating factors, presents a substantial question). Therefore, we will address Appellant's claim.

Our well-settled standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its

- 25 -

judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted).

"A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." *Commonwealth v. Crump*, 995 A.2d 1280, 1283 (Pa. Super. 2010) (citation omitted). Further, where a PSI exists, "we shall . . . presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Conte*, 198 A.3d 1169, 1177 (Pa. Super. 2018) (citation omitted), *appeal denied*, 206 A.3d 1029 (Pa. 2019).

Where a sentence is imposed within the guidelines, we may only reverse the trial court if we find that the circumstances of the case rendered the application of the guidelines "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2). Our review of the reasonableness is based upon the factors contained in 42 Pa.C.S. § 9781(d), and the trial court's consideration of the general sentencing standards contained in 42 Pa.C.S. § 9721(b). *See Commonwealth v. Baker*, 72 A.3d 652, 663 (Pa. Super. 2013). However, "[w]e cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009)

(citation omitted). Further, it is well settled that "Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." ***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa. Super. 2013) (citation omitted).

Here, at sentencing, the trial court indicated that it had reviewed Appellant's PSI report "several times" prior to the hearing. N.T. Sentencing Hr'g, 12/17/19, at 7. The trial court also heard additional background information about Appellant from counsel, as well as testimony from Appellant's girlfriend. ***See id.*** Nonetheless, the trial court noted that it was particularly concerned with Appellant's attempts to intimidate Ramos and prevent him from testifying at trial. ***Id.*** at 15-16. Under these circumstances, where the record reflects the trial court's due consideration of the appropriate sentencing factors, Appellant is not entitled to relief. ***See Macias***, 968 A.2d at 778.

Judgment of sentence affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/26/2021

- 27 -