2020 PA Super 139

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| v. | : | |
| FRANK NELLOM, | : | |
| Appellant | : | No. 1669 EDA 2019 |

Appeal from the Judgment of Sentence Entered June 3, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0007367-2018

BEFORE:   SHOGAN, J., KUNSELMAN, J., and COLINS, J.[*]

OPINION BY SHOGAN, J.:                              **FILED JUNE 10, 2020**

Frank Nellom ("Appellant") appeals *pro se* from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his jury trial conviction for theft of services.[1]  After careful review, we affirm the conviction, but vacate and remand for resentencing.

The trial court summarized the facts adduced at trial, as follows:

> On or about September 20 of 2018, [Philadelphia Electric Company ("PECO")] employees Keith Steger and John Senkow with the assistance of Darby police officer Thomas Takacs responded to 520 Keystone Avenue in Darby due to a complaint from PECO's claims department.  (N.T. 04/9/19, p. 110).  The house's lights were on when Appellant answered the door.  (N.T. 04/9/19, p. 112).  Appellant was the only person inside the residence.  (N.T. 04/9/19, p. 112).  After gaining access to the meter in the basement, Mr. Steger and Mr. Senkow discovered the meter had

---

[*] Retired Senior Judge assigned to the Superior Court.

[1]  18 Pa.C.S. § 3926(a)(1).

been altered. (N.T. 04/9/19, p. 113). The meter was a "foreign meter" that did not belong to the house. (N.T. 04/9/19, p. 116). The meter's ring was missing, which posed a risk of causing an "electrical flash." (N.T. 04/9/19, p. 116). The dirt on the meter indicated that it had been left out of the socket until fairly recently. (N.T. 04/9/19, p. 117). In order to safely remove the meter, the service to the house had to be cut from the outside. (N.T. 04/9/19, p. 120). Outside the tap connection that connected power to the house was loose, creating an unsafe environment. (N.T. 04/9/19, p. 123).

At the same time, Appellant tried to barter with Mr. Senkow by offering to pay half of what he owed PECO in return for turning the power back on. (N.T. 04/9/19, p. 134). Sometime later after his power was shut off, Appellant contacted PECO's customer support to have the power put back on as well. (N.T. 04/9/19, p. 136). Investigation into the house at 520 Keystone Avenue determined that while Appellant did not own the house, documentation placed him at the address[,] and his business was being run out of the property. (N.T. 04/9/19, p. 137).

Analytics indicated that the last date the meter took a reading was on May 10, 2017. (N.T. 04/9/19, p. 177). A theft calculation conducted by PECO business analysist David Bucholtz determined that PECO should have received $2,478 from the location had the meter not been tampered with. The total calculation amounted to $3,658 including $1,180 for fees associated with needing to send out a team to cut the taps. (N.T. 04/9/19, p. 179).

At trial, Appellant acted as his own counsel [after an extensive waiver of counsel colloquy]. The trial court advised [Appellant] what acting as his own attorney would entail.

> The Court: Okay. Do you understand that errors or mistakes are made by you during this trial, by either the Commonwealth, the [c]ourt or you, and evidence is presented which is improper and you fail to object or to make appropriate motions, then your rights with respect to these errors and mistakes will be lost to you permanently, do you understand that?
>
> [Appellant]: Yes, I understand.

(N.T. 04/9/19, p. 6).

Trial Court Opinion, 10/17/19, at 2–3 (footnote omitted).

Trial commenced on April 9, 2019, with Alex Amoroso, Esq., as standby counsel. On April 10, 2019, the jury found Appellant guilty of one count of theft of services. N.T., 4/10/19, at 39. It further found that the value of the stolen services exceeded $50. *Id.* On June 3, 2019, Appellant was sentenced on the conviction, graded as a third degree felony, to twenty-one to forty-two months of incarceration, followed by three years of probation. The court also ordered Appellant to pay $3,659.00 in restitution to PECO. After being informed of his appeal rights, including the assistance of counsel on appeal, Appellant filed his *pro se* notice of appeal on June 18, 2019.[2]

---

[2] Appellant filed another *pro se* notice of appeal at 1935 EDA 2019, which bears the same trial court docket number as the instant appeal. In response to A Rule to Show Cause as to why the appeal at 1935 EDA 2019 should not be dismissed as duplicative of 1669 EDA 2910, Appellant filed an application to consolidate the appeals. On January 8, 2020, this Court ordered:

> Appellant's application to consolidate the appeals at Superior Court Docket Nos. 1669 EDA 2019 and 1935 EDA 2019 is DENIED. The appeal at 1935 EDA 2019 is duplicative of the appeal at 1669 EDA 2019.
>
> Because the brief Appellant filed at 1935 EDA 2019 is also duplicative of the brief this Court docketed as Appellant's "Supplemental Brief" at 1669 EDA 2019, the appeal at 1935 EDA 2019 is DISMISSED AS DUPLICATIVE of the appeal at 1669 EDA 2019.
>
> Appeal at Superior Court Docket No. 1935 EDA 2019 DISMISSED.

The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) statement and gleaned the questions complained of on appeal from Appellant's *pro se* Application for Relief filed in this Court on October 10, 2019.[3] The court identified the issues, as follows:

> 1. The trial court erred by refusing Appellant's request to show jurors his utility bills from when he lived at the 520 Keystone Avenue location where the theft was alleged to have taken place, and current address bills showing the Commonwealth of Pennsylvania through the [Low Income Home Energy Assistance Program ("LIHEAP")] pays the majority if not all of his electric and gas expenses each year as a result of his being declared disabled since 2015, which is the last time service was in Appellant's name at the 520 Keystone Avenue address. In order to show jurors even if Appellant knew how to place taps in the electrical line two stories high started as the evidence creating the theft, would not risk his life doing so to save his State money. Although, having grown up at the Union League of Philadelphia as a teenager very fond of his state.
>
> 2. The trial court erred by after rejecting the over $2,000 evidence needed to prove the third degree felony charged, thereby, required to deem the value less than $50.00 as mandated by 18 Pa. C.S.A. § 3903.(c)(3). "When the value of property cannot be satisfactory ascertained pursuant to the standards set forth in paragraphs (1) and (2) of this subsection its value shall be deemed to be an amount less than $50." No authority authorized jurors to be instructed to guess at over or under $50. Since [neither] would prove the over $2,000 amount to establish the third felony charged, and sentenced imposed upon.
>
> 3. The trial court erred by failing to instruct jurors that according to 18 Pa.C.S.A. §[3926](d)(1), because the owner of

---

Order, 1/8/20, at unnumbered 1.

[3] We question the trial court's reliance on this Application for Relief rather than addressing the issues as outlined in Appellant's *Pro Se* Motion for Reconsideration filed in the trial court on June 7, 2019.

the property has legal possession and access "may be reasonably inferred to have acted to avoid or tamper with the public utility meter or measuring device with the intent to obtain the public utility service without making full compensation thereof.

    4.    Evidence was insufficient to support the Verdict Slip finding that Appellant committed theft of Service from on or about May 10, 2017 to on or about September 20, 2018.

Trial Court Opinion, 10/17/19, at 1–2 (*verbatim*).

The trial court determined that Appellant's arguments were meritless. Specifically, the trial court concluded that:   1) it was Appellant's responsibility, and not the court's, to introduce his billing records into evidence; 2) the record did not reflect that the trial court rejected evidence of the value of the stolen services; additionally, it was within the trial court's province to instruct the jury; 3) Appellant waived any challenge to the jury instruction; and 4) the trial evidence was more than sufficient to support the guilty verdict.  Trial Court Opinion, 10/17/19, at 3–6.

Appellant re-framed the issues in his appellate brief, which we rephrase for sake of clarity:

    I.    Was the evidence sufficient to demonstrate that:  1) there were unauthorized taps on the outside electric line to the property; and 2) the electric line to the property had been previously cut or disconnected?

    II.    Did the trial court err by refusing to allow Appellant to introduce evidence of the PECO billing history for the subject property?

    III.    Did the trial court err by refusing to allow Appellant to introduce evidence that his PECO bills were paid through his participation in the LIHEAP assistance program?

IV.     Was the verdict slip deficient because it did not require the jury to make a specific finding as to the value of the stolen services, resulting in an illegal sentence?

V.      Was the evidence sufficient to demonstrate that Appellant lived at the subject property?

Appellant's Brief at 3.

Appellant's first and fifth issues allege that the evidence was insufficient to support a theft of services conviction. We review Appellant's challenge under the following precepts:

> A challenge to the sufficiency of the evidence is a question of law, subject to plenary review. When reviewing a sufficiency of the evidence claim, the appellate court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the verdict winner. Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Levy*, 83 A.3d 457, 461 (Pa. Super. 2013) (quoting *Commonwealth v. Williams*, 871 A.2d 254, 259 (Pa. Super. 2005)).

Section 3926 of the Crimes Code defines the offense of theft of services, as follows:

**(a) Acquisition of services.--**

(1) A person is guilty of theft if he intentionally obtains services for himself or for another which he knows are available only for compensation, by deception or threat, by altering or tampering with the public utility meter or measuring device by which such services are delivered or by causing or permitting such altering or

> tampering, by making or maintaining any unauthorized connection, whether physically, electrically or inductively, to a distribution or transmission line, by attaching or maintaining the attachment of any unauthorized device to any cable, wire or other component of an electric, telephone or cable television system or to a television receiving set connected to a cable television system, by making or maintaining any unauthorized modification or alteration to any device installed by a cable television system, or by false token or other trick or artifice to avoid payment for the service.

18 Pa.C.S. § 3926(a)(1).

In support of his first insufficiency claim, Appellant contends that there was no evidence that "the electric line to the property was cut or disconnected by PECO prior to the date the PECO investigator stated that he cut the line." Appellant's Brief at 7. While Appellant is correct in this assertion, he fails to explain its relevance. Appellant is claiming that statements in the affidavit of probable cause that PECO investigators observed "unauthorized taps at the rear of the property" . . . "unauthorized taps creating theft," combined with photographs of the outside taps admitted into evidence suggested to the jury that he had tampered with the outside line and speculates that this information could have influenced the jury's guilty verdict. *Id.* There is no support for this position. First, any evidence that PECO had previously disconnected or cut the line would not have any impact on Appellant's involvement in the theft of services. Second, even if the language of the affidavit of probable cause could conceivably be interpreted as indicating that Appellant was responsible for interference with the outside line or taps, the jury was not privy to the information included in the affidavit. Third, there

was no evidence presented at trial that the outside taps had been cut by either PECO or Appellant prior to September 20, 2018.

Testimony concerning the taps was elicited from Keith Steger, the PECO revenue protection foreman, and was limited to statements concerning their appearance, *i.e.,* they "didn't look safe," were "sub-PECO standards," and the "connections were loose." N.T., 4/9/19, at 121–123. He also stated that "an electrician can make the taps." *Id.* at 123. When Mr. Steger described the images of the outside line and taps by reference to the photographic evidence, Appellant did not object to the admission of the photographs. *Id.* at 124. As the Commonwealth did not present the jury with any evidence suggesting that Appellant tampered with the taps or cut the outside line, its guilty verdict could not have been compromised by the admission of photographs. Simply put, the Commonwealth was not seeking to prove that Appellant committed theft of services traceable to his interference with the outside line; rather, its prosecution of Appellant was premised on the illegal electrical service he received *via* the replacement of a PECO meter with a foreign meter. Statements included in the affidavit of probable cause that were not before the jury and photos of the outside of the property, therefore, did not implicate the question the sufficiency of the evidence supporting Appellant's conviction for theft of services. Appellant's argument to the contrary is meritless.

Appellant's second sufficiency challenge concerns the evidence that Appellant lived at the subject property. Appellant claims that 18 Pa.C.S.

§ 3926(d)(1) creates an inference that the property owner is responsible for any activity resulting in the theft of services, and because he was not the owner, the evidence must demonstrate that Appellant lived at the subject property.

Initially, we disagree with Appellant's legal premise that 18 Pa.C.S. § 3926(d)(1) somehow imposes a stronger inference of wrongdoing upon the property owner. Rather, the subsection provides:

**(d) Inferences.—**

(1) Any person having possession of or access to the location of a public utility meter or service measuring device which has been avoided or tampered with so as to inhibit or prevent the accurate measurement of utility service and who enjoys the use of or receives the benefit from the public utility service intended to be metered or measured by the public utility meter or measuring device so avoided or tampered with may be reasonably inferred to have acted to avoid or tamper with the public utility meter or measuring device with the intent to obtain the public utility service without making full compensation therefor.

18 Pa.C.S. § 3926(d)(1). There is no reference in the statutory language to the property owner; rather the inference applies to "**[a]ny person** having possession of or access to the location of a public utility meter or service measuring device." *Id.* (emphasis added).

Additionally, this Court has described the proof needed to permit an inference of use of non-metered utility service. In *Commonwealth v. Deer*, 615 A.2d 386 (Pa. Super. 1992), we concluded:

[T]he statute does recognize that more than one person may be the beneficiary of service. The statute simply allows an inference where such a beneficiary has access to a meter which was

tampered with to prevent accurate measurement. The fact that others may also benefit will allow this inference to apply equally to them. It remains, however, the Commonwealth's responsibility after application of the inference to establish beyond a reasonable doubt that the defendant committed the theft. The absence of proof may render a conviction unconstitutional, but the inference itself, sanctioned by statute, is not.

An inference has been defined as no more than a logical tool enabling the trier of fact to proceed from one fact to another. Where the inferred fact is more likely than not to flow from the proved fact on which it is made to depend the evidentiary inference will pass constitutional scrutiny. We find that the inference challenged in the present case is able to meet the more likely than not standard. Where an individual has access to or possession of a measuring device, and the device has been shown to have been tampered with so as to inhibit or prevent the accurate measurement of utility service, and where this same individual enjoys the use or receives the benefit of the utility service which has been interrupted, then it is more likely than not that this individual tampered with the measuring device with the intent of obtaining service without making full compensation for it.

*Id.* at 387–388 (internal citations and quotations omitted). *See also Commonwealth v. Gallagher*, 582 A.2d 1349, 1351 (Pa. Super. 1990) (discussing statutory requirements, and evidence needed, to permit an inference that an appellant unlawfully acquired services). Thus, the proper inquiry here is whether the Commonwealth presented sufficient evidence that Appellant more likely than not had access to the tampered electric meter and derived a benefit from the pilfered utility service.

The trial court summarized the evidence supporting Appellant's conviction of theft of services as follows:

Appellant was the only person inside the residence when PECO employees went to the residence. Business records indicated that

- 10 -

> Appellant ran a business out of the residence. Appellant acknowledged his debt when he tried to make a deal with Mr. Senkow, offering to pay half of the money that he owed in order to have the power reconnected.

Trial Court Opinion, 10/17/19, at 6 (record references omitted). In addition to these findings, the record demonstrates that Commonwealth witness John Senkow, a PECO senior security specialist, reviewed the records pertaining to the subject property and uncovered an internet White Pages listing for Appellant at 520 Keystone Ave. N.T., 4/9/19, at 157. Mr. Senkow also referred to documentation reflecting that Appellant called PECO on September 20, 2018, the day when service was cut, to request that the electricity be connected. *Id.* at 159.

Moreover, and most significantly, Officer Takacs, who accompanied the PECO representatives to the subject property on September 20, 2018, offered compelling testimony concerning Appellant's connection to 520 Keystone Ave. Officer Takacs revealed that when he talked to Appellant in conjunction with the PECO investigation, Appellant admitted that "he lived on the property for years." N.T., 4/9/19, at 170. Officer Takacs also recounted, in his capacity as a police officer, that he responded to two previous calls at that address, one in December of 2015 and one in April of 2018. On both occasions, Appellant was present at the residence. *Id.* at 168–170. Appellant did not challenge Officer Takac's statement concerning Appellant's residency on cross-examination. *Id.* at 170–172.

This quantum of evidence supports a sustainable inference that Appellant had access to the foreign electric meter on the subject property and benefitted from the utility service acquired through the device. Appellant, therefore, is not entitled to relief on this insufficiency claim.

Appellant's second and third issues concern the billing history of the subject property and alleged payments made to PECO on Appellant's behalf by the LIHEAP assistance program. Appellant addresses these issues together, generally contending that the trial court erred when it refused to allow Appellant to introduce evidence that LIHEAP was paying Appellant's PECO bills. Appellant avers that this evidence would demonstrate that he did not need to steal electricity. Appellant's Brief at 9.

Our review of this claim is hampered because Appellant does not provide a record reference to the trial court's denial of his request to introduce this evidence or the trial judge's ruling on his request. An appellant must identify where in the record an issue was preserved or this Court may deem it waived. **See** Pa.R.A.P. 2117(c); 2119(e). For this reason, we conclude that Appellant has waived the issue pertaining to admission of his PECO bills. **See Commonwealth v. Cole**, 167 A.3d 49, 64 (Pa. Super. 2017) (finding waiver when the appellant failed to identify where in the record an issue was preserved).

Even if not waived, Appellant's claim is not supported by the record. During *voir dire*, Appellant explained to the trial court that he wanted to

ascertain if the jurors were acquainted with the LIHEAP program because his "whole defense was that [LIHEAP] paid for [his] utilities." N.T., 4/9/19, at 38. The trial court then instructed Appellant: "Well, you can -- if that's part of your defense, you can explain it to them." *Id.* This statement cannot be construed in any fashion as a limitation on Appellant's right to introduce evidence of LIHEAP's payment assistance. The record also discloses that Appellant cross-examined Mr. Senkow about Appellant's participation in the LIHEAP program. N.T., 4/9/19, at 153–156. At no time during this exchange did the trial court issue a ruling on the admissibility of Appellant's bills. *Id.*

Another reference to Appellant's intent to introduce his bills into evidence occurred after the Commonwealth rested its case. At this point, Appellant informed the court that he "would like to testify tomorrow so I can bring in my [PECO] bills," *see* N.T., 4/9/19, at 186, and the court acknowledged this representation. *Id*. However, on the following day, Appellant opted not to testify and rested his case without presenting any evidence. N.T., 4/10/19, at 3. Again, no trial court action precluded the admission of the LIHEAP evidence.[4] Accordingly, Appellant's second and third issues are meritless.

---

[4] If, in fact, the trial court informed Appellant that the only admissible billing evidence in this regard would be LIHEAP payments between May 2017 and September 2018, the timeframe of the alleged theft of services, that ruling would be upheld. The fact that sometime before May of 2017 or after September 2018 Appellant received LIHEAP assistance for his utility bills would not be relevant to the prosecution of the instant crime.

Appellant's final issue has two components. Appellant first contends that the verdict slip was incomplete because it did not require the jury to find that the value of the stolen services exceeded $2,000.00. He then avers that this deficiency resulted in an illegal sentence. Appellant's Brief at 10.

Appellant did not object to the verdict slip at trial, *see* N.T., 4/10/19, at 3, therefore an appellate challenge to its language is waived. *See Commonwealth v. Matty*, 619 A.2d 1383, 1387 (Pa. Super. 1993) (holding that the defendant's "failure to contemporaneously object to the jury instructions or the verdict slip . . . operates as a waiver."). However, Appellant is also asserting that the jury's verdict resulted in an improper grading of the level of the theft of services conviction. Appellant argues that the Commonwealth failed to prove the value of stolen services and the jury's verdict determined only that the amount exceeded fifty dollars. He, therefore, contends that his conviction should have been graded as a summary offense.[5] Appellant's Brief at 10.

"A claim that the court improperly graded an offense for sentencing purposes implicates the legality of a sentence." *Commonwealth v.*

---

[5] At his sentencing hearing, Appellant urged that the offense should have been graded as a misdemeanor of the second degree. N.T. (Sentencing), 6/3/19, at 5–7.

***Mendozajr***, 71 A.3d 1023, 1027 (Pa. Super. 2013) (citation omitted).[6] While

we reject Appellant's contention that his conviction should be graded as a

summary offense, ***see*** n.8, *infra*, we nonetheless conclude that sentence

imposed upon the count of theft of services graded as a third degree felony

violates the constitutional principles set forth in ***Apprendi v. New Jersey***,

530 U.S. 466 (2000).[7]

---

[6] There exists contrary jurisprudence on whether the grading of an offense implicates the legality of a sentence. In ***Commonwealth v. Spruill***, 80 A.3d 453 (Pa. 2013), the Pennsylvania Supreme Court addressed "the proper scope of the illegal sentence doctrine which allows for review of otherwise defaulted claims." ***Id.*** at 454 (quotation omitted). After review, the high Court determined that the issue on appeal, *i.e.,* whether the trial court erred by convicting the appellee of aggravated assault graded as a second-degree felony where the Commonwealth charged her with aggravated assault as a first-degree felony, concerned the underlying conviction and did not implicate the legality of her sentence. ***Id.*** at 461.

Herein, Appellant claims the sentence on his theft of services conviction was illegal because the court improperly graded that offense as a third degree felony in contravention of the jury's express finding that the value of the services stolen "exceeded fifty dollars." N.T., 4/10/19, at 39; Verdict Slip, 4/10/19, at 1. Appellant pursued a position that the offense should have been graded as a misdemeanor of the second degree, and not as a third degree felony at his sentencing. N.T. (Sentencing), 6/3/19, at 5–7. Because Appellant is complaining about the sentence and is not seeking an arrest of judgment for this conviction, ***Spruill*** is inapposite.

[7] In ***Apprendi,*** the United States Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. ***See also Commonwealth v. Panko***, 975 A.2d 1189, 1191 (Pa. Super. 2009) (citing ***Apprendi*** and noting that "a fact that increases the maximum penalty or changes the grade of an offense must be submitted to a jury and proven beyond a reasonable doubt.").

18 Pa.C.S. § 3926(c) governs grading of theft of services offenses and reads in relevant part, as follows:

**(c) Grading.--**

(1) An offense under this section constitutes a summary offense when the value of the services obtained or diverted is less than $50.

(2) When the value of the services obtained or diverted is $50 or more, the grading of the offense shall be as established in section 3903 (relating to grading of theft offenses).

18 Pa.C.S. §3926(c)(1)(2).

18 Pa.C.S. § 3903, in turn, provides that theft offenses are graded, in relevant part, as follows:

**(a.1) Felony of the third degree.** -- [T]heft constitutes a felony of the third degree if the amount involved exceeds $2,000 . . . .

* * *

**(b) Other grades.**--Theft . . . constitutes a misdemeanor of the first degree, except that if the property was not taken from the person or by threat, or in breach of fiduciary obligation, and:

(1) the amount involved was $50 or more but less than $200 the offense constitutes a misdemeanor of the second degree; or

(2) the amount involved was less than $50 the offense constitutes a misdemeanor of the third degree.

18 Pa.C.S. § 3903(a.1), (b)(1)(2).

While the Commonwealth originally charged Appellant with theft of services graded as a third degree felony and presented uncontradicted

- 16 -

evidence that the total value of services obtained was $3,658.00,[8] the only question presented for a determination by the jury was whether the "value of the services obtained exceeded fifty dollars," to which the jury answered "yes." N.T., 4/10/19, at 39; Verdict Slip, 4/10/19, at 1. The effect of this verdict merely established that the offense was greater than a summary offense. *See* 18 Pa.C.S. § 3926(c)(1) (theft of services is a summary offense if the value of the services taken is fifty dollars or less). However, the trial court, without objection by the Commonwealth, failed to present the jury with the essential questions necessary to elevate the grade of the offense from a misdemeanor of the second degree to either a misdemeanor of the first degree, or a felony of the third degree — namely, (1) whether the amount involved was between $200.00 and $2,000.00, or (2) whether the amount involved exceeded $2,000.00, respectively. 18 Pa.C.S. § 3903(b), (a.1). Therefore, in light of *Apprendi*, we are obligated to conclude that the verdict on this count only authorized the trial court to sentence Appellant for theft of

---

[8] Testimony from PECO business analysist David Bucholtz determined that PECO should have received $2,478.00 from the location had the meter not been replaced by the unauthorized foreign meter. The total calculation amounted to $3,658.00, including $1,180.00 for the expense incurred when PECO cut the taps for safety reasons. N.T. 4/9/19, at 179. Based upon this undisputed computation, Appellant is incorrect when he states that the theft of services conviction should have been graded as a summary offense.

services graded as a misdemeanor of the second degree, the maximum sentence for which is two years. *See* 18 Pa.C.S. § 1104(2).[9]

For the foregoing reasons, we affirm the trial court's order in part and remand in part for resentencing, with Appellant's offense graded as a second degree misdemeanor rather than a third degree felony.

Judgment of sentence vacated. Case remanded for resentencing consistent with this Opinion. Jurisdiction relinquished.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/10/2020

---

[9] The two cases cited by the Commonwealth, *Commonwealth v. Hanes*, 522 A.2d 622, 626 (Pa. Super. 1987) and *Commonwealth v. Reiss*, 655 A.2d 163, 168 (Pa. Super, 1995), to support its position that the Commonwealth is not required to establish the precise market value of the stolen property for purposes of grading an offense, pre-date *Apprendi*.