**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ADAM PARKER | : | |
| | : | |
| Appellant | : | No. 237 WDA 2021 |

Appeal from the Judgment of Sentence Entered January 15, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0000515-2020

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                **FILED: OCTOBER 12, 2021**

Appellant Adam Parker appeals from the judgment of sentence imposed for carrying a firearm without a license and recklessly endangering another person (REAP).[1]   On appeal, Appellant challenges the sufficiency of the evidence underlying each conviction.  We affirm.

The trial court set forth the relevant facts of this case as follows:

The testimony presented at trial, and found by this court to be credible, is as follows: on January 5, 2020 at approximately 3:30 a.m., Jeffery Wakefield (Wakefield) was driving to work at Rivers Casino.  He stopped his vehicle approximately five (5) feet behind another vehicle at a red traffic signal by the casino.  At that time, an occupant of the [other] vehicle stuck his arm out of a passenger side window and discharged a firearm into the air.  When the firearm was discharged, the vehicle was in the front of the casino.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6106(a)(2), and 2705, respectively.

Wakefield proceeded into the casino and reported the incident to security.

Shortly thereafter, Pittsburgh Police received a 9-1-1 call related to this incident. Upon arrival at the casino, City of Pittsburgh Police Officers Maxwell Palinsky and Nathan Powers located the vehicle, a white Escalade, parked on the fourth floor of the casino parking garage. Officer Powers looked into the vehicle with his flashlight and observed a magazine attached to a firearm sticking out of the pocket located on the back of the driver's seat. Officer Palinsky then went into the casino and reviewed the surveillance video that had been preserved while Officer Powers remained at the Escalade so as to secure the vehicle.

The Commonwealth played the surveillance video in open court. This surveillance video showed a white Escalade stopped at a red light outside of Rivers Casino. Wakefield's car is visible behind the Escalade. As the two vehicles are stopped at the light, an arm with black or dark colored clothing reaches out of the second row passenger window, and a flash is seen. Casino surveillance cameras follow this Escalade into the parking lot. Upon parking, the second row passenger door opens and Appellant exits. Appellant is wearing a black shirt.

Police at the casino monitor the individuals who exited the vehicle, and they are questioned by Officer Palinsky. Thereafter, Officer Palinsky obtained consent to search the white Escalade. After consent was received and keys to the vehicle were provided, Officer Powers retrieved a nine millimeter pistol and a magazine containing eleven (11) live rounds of ammunition.

City of Pittsburgh Police Officer Timothy Cole testified that he responded to the casino and reviewed the surveillance. During his investigation, he located the area where the firearm was discharged. He observed and recovered a spent shell casing in the grass.

The firearm was retained in police custody and tested for operability by the Allegheny County Crime Lab. The firearm was found to be operable. The Allegheny County Crime Lab also compared the spent shell casing found by Officer Cole with the casing from the test firing, and they were determined to match.

The Commonwealth admitted Exhibit 2, which is the Pennsylvania State Police certification indicating that Appellant does not have a license to carry a firearm. At trial, Appellant called as a witness,

> Maurice Oliver. During his direct testimony, Mr. Oliver invoked his Fifth Amendment Privilege against self-incrimination. At that time, this Court stopped the proceedings and appointed Mr. Oliver counsel. The trial adjourned for the day and reconvened on September 30, 2020. At that time, Mr. Oliver's counsel advised the Court that Mr. Oliver was invoking his privilege against self-incrimination and would not be offering any additional testimony. The Commonwealth then made a motion to strike Mr. Oliver's testimony, as the Commonwealth was not afforded a full and fair opportunity to cross-examine Mr. Oliver. This Court granted this request.

Trial Ct. Op., 4/21/21, at 3-5 (record citations omitted and some formatting altered).[2]

On January 5, 2020, the Commonwealth charged Appellant with one count of carrying a firearm without a license and one count of REAP.[3] Appellant waived his right to a jury trial and proceeded to a bench trial. At the conclusion of the bench trial, the trial court found Appellant guilty of both charges. N.T., 9/30/20, at 15. On January 15, 2021, the trial court sentenced Appellant to one year of probation at each conviction and ordered Appellant to serve the sentences concurrently.

On February 12, 2021, Appellant filed a timely appeal. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues:

---

[2] The relevance of the trial court striking Mr. Oliver's testimony will be explained below.

[3] At the preliminary hearing, the Commonwealth withdrew an additional charge of discharging a firearm in violation of a local ordinance.

1. Whether the evidence presented at trial was insufficient as a matter of law to sustain a conviction for carrying a firearm without a license?

2. Whether the evidence presented at trial was insufficient as a matter of law to sustain a conviction for recklessly endangering another person?

Appellant's Brief at 4 (formatting altered).

## Carrying a Firearm Without a License

In his first issue, Appellant contends that there was insufficient evidence to prove that he carried a firearm without a license in violation of Section 6106(a)(2). *Id.* at 11. Appellant notes that there were five other passengers in the vehicle, the firearm that was recovered was registered to one of the passengers, and that passenger, Maurice Oliver, had a permit to carry the firearm. *Id.* at 11-12. Appellant also argues that although the police officers recovered the firearm from a pocket on the back of the driver's seat, the video recording shows that Appellant actually exited from the other side of the car. *Id.* at 12. Additionally, the video recording showed that the shooter was wearing dark clothing but did not reveal descriptive markings on the arm of the individual who held the gun. *Id.*

The Commonwealth counters Appellant's contentions and argues that the evidence was sufficient to establish Appellant's guilt on both counts. Commonwealth's Brief at 8. The Commonwealth asserts that it is undisputed that a shot was fired from the vehicle in which Appellant was a passenger. *Id.* at 4-5. The video recording showed that the gun was fired from the rear seat on the passenger side and that the shooter was wearing dark clothing.

*Id.* at 8. Additionally, the video recording showed that Appellant was the first person to exit through the rear passenger door from which the gun was fired, and Appellant was wearing dark clothing. *Id.* at 8-9. The Commonwealth further states that "It is not outlandish or unreasonable to infer that the person who is the first to exit a vehicle from a particular door was likely the person who had been sitting there. In fact, it is the single most reasonable inference under the circumstances." *Id.* at 8. Given this seating position, it is reasonable to conclude that Appellant fired the shot. *Id.* Finally, the Commonwealth notes that the only support for Appellant's claim concerning ownership of the firearm was from Mr. Oliver, and the trial court struck Mr. Oliver's testimony when he employed his Fifth Amendment right to prevent the Commonwealth from cross-examining him. Therefore, Mr. Oliver's testimony is not part of the record and accordingly, cannot be considered by this Court. *Id.* at 9.

Our standard of review governing a challenge to the sufficiency of the evidence is as follows:

> A challenge to the sufficiency of the evidence is a question of law, subject to plenary review. When reviewing a sufficiency of the evidence claim, the appellate court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the verdict winner. Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty. Finally, the trier of fact while passing upon the credibility of witnesses and the weight

of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Nellom*, 234 A.3d 695, 700 (Pa. Super. 2020) (citation omitted). Additionally, the Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. *Commonwealth v. Crosley*, 180 A.3d 761, 767 (Pa. Super. 2018). Indeed, "the facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence[, and a]ny doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Franklin*, 69 A.3d 719, 722 (Pa. Super. 2013) (citations omitted and formatting altered).

The crime of carrying a firearm without a license is defined in relevant part as follows:

> A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.

18 Pa.C.S. § 6106(a)(2).

Where possession is an element of an offense, the Commonwealth must demonstrate either actual or constructive possession. *See Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013). Because the gun was not

recovered on Appellant's person, the Commonwealth was required to establish constructive possession.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Id.* (citation omitted).

The trial court concluded that the Commonwealth proved the elements of Section 6106(a)(2) beyond a reasonable doubt. Trial Ct. Op. at 6. Reviewing the evidence and all reasonable inferences therefrom in favor of the Commonwealth as we must, we conclude there was no error in the trial court concluding that Appellant was guilty of carrying a firearm without a license. As the trial court noted, it was undisputed that Appellant did not have a license to carry a firearm. *Id.*; N.T., 9/15/20, at 8. An eyewitness testified that he saw a person reach out of the vehicle and fire a gun. N.T., 9/15/20, at 9. The video recording, which was admitted into evidence without objection, supported the eyewitness's testimony that an individual reached out of the rear window of the passenger-side door and discharged a firearm on the street in front of the casino. *Id.* at 14, 15-20.

Police Officer Maxwell Palinsky reviewed the video and testified that the shooter was wearing black clothing. *Id.* at 19. The record also reveals that

Appellant was the first person to exit from the rear passenger-side door where the gunshot originated. *Id.* at 16. The trial court stated that in addition to the video evidence, it found Officer Palinsky's testimony credible. N.T., 9/30/20, at 15. This evidence reasonably infers and substantiates the conclusion that Appellant was sitting in the rear passenger-side seat at the time the gun was fired, and it supports the reasonable conclusion that, due to his seating position inside the car, Appellant was the person who fired the gun. *See Nellom*, 234 A.3d at 700.

As noted, the video and testimonial evidence revealed that the shooter was wearing a black shirt. N.T., 9/15/20, at 9, 16, 19, 26. The video further showed the vehicle park in a parking garage at the casino, and the person who first exited the door from which the shot came was a white male with brown hair, six feet tall, and wearing a long-sleeve black shirt. *Id.* at 16-17. Officer Palinsky testified that police arrived and interviewed the occupants of the vehicle at the scene, and Appellant matched the appearance of the person in the video who first exited the rear passenger-side door.[4] *Id.* at 17.

---

[4] Appellant also states that during cross-examination by Appellant's counsel, Officer Palinsky testified that Appellant was wearing red. Appellant's Brief at 13. After reviewing the testimony, although Officer Palinsky said "he has a red shirt on," it is unclear to whom he is referring. N.T., 9/15/20, at 26. Counsel asks questions concerning the clothing worn by multiple people after reviewing the surveillance video. *Id.* at 26-27. While Officer Palinsky says "Red and a black by [Appellant]," it is unclear if the officer meant that Appellant wore red and black together or if the color red was attributed to another person. *Id.* at 26. Nevertheless, Officer Palinsky affirmatively concludes: "And [Appellant] is wearing a black top." *Id.*

Additionally, the police recovered a gun from the rear seat of the vehicle. *Id.* at 18. The gun was located in a pocket behind the driver. *Id.* at 18, 31. Moreover, the shell casing found on the ground where the shot was fired matched the gun recovered from the vehicle. *Id.* at 25, 37-38. As we previously discussed, Appellant cites testimony indicating that the gun may have belonged to another passenger, but that testimony was stricken in its entirety. N.T., 9/30/20, at 6-7. Pursuant to our standard of review, it may be reasonably inferred that the gun was within reach of Appellant who was a passenger in the rear seat. *See Nellom*, 234 A.3d at 700 (providing that the Commonwealth need not preclude every possibility of innocence or establish the guilt to a mathematical certainty). As noted, the Commonwealth is not limited to direct evidence, and it may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. *See Crosley*, 180 A.3d at 767. The fact that the evidence establishing Appellant's participation in a crime is circumstantial does not preclude a conviction where the evidence, coupled with the reasonable inferences drawn therefrom, overcomes the presumption of innocence. *See Franklin*, 69 A.3d at 722. "We may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of" the crimes charged beyond a reasonable doubt, Appellant's convictions will be upheld. *See id.* at 722-23. Accordingly, on this record, the trial judge as fact finder in this non-jury trial could reasonably conclude that Appellant was sitting next to the door

through which he exited and from which the shot was fired, and that the gun recovered from the car was nearby and accessible to Appellant such that he had the power to control the firearm. *See id.*

Based on the totality of the circumstances, there was sufficient evidence to establish that Appellant constructively possessed the gun. *See Hopkins*, 67 A.3d at 820. Because the gun was fired out of the window of the door through which Appellant exited and the gun was recovered from the pocket behind the driver's seat, the evidence established that Appellant had both the power to control the gun and the intent to exercise that control. *See id.* After reviewing the evidence and all reasonable inferences derived therefrom in the light most favorable to the Commonwealth as the verdict winner, we conclude that the evidence established that Appellant possessed a firearm without a license while riding in a vehicle, and he discharged that firearm out of the vehicle's window. *See Crosley*, 180 A.3d at 767; *Franklin*, 69 A.3d at 722-23. Accordingly, the evidence was sufficient to prove Appellant guilty of carrying a firearm without a license pursuant to Section 6106(a)(2). Appellant is entitled to no relief with respect to his challenge to the sufficiency of the evidence supporting his conviction for carrying a firearm without a license.

**REAP**

Similar to the reasons argued above, Appellant next asserts that the evidence did not establish that he engaged in conduct that placed another person in danger of serious bodily injury or death. Appellant's Brief at 14.

Therefore, Appellant contends that the evidence was insufficient to establish the elements of REAP beyond a reasonable doubt. *Id.*

As this issue also presents a challenge to the sufficiency of the evidence, our standard of review remains the same. *See Nellom*, 234 A.3d at 700. The crime of REAP is defined as follows:

> A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S. § 2705. To sustain a conviction for REAP, "the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. Danger, not merely the apprehension of danger, must be created." *Commonwealth v. Headley*, 242 A.3d 940, 944 (Pa. Super. 2020) (citation omitted). Moreover, discharging a firearm, by itself, does not constitute REAP. *See id.* (citing *Commonwealth v. Kamenar*, 516 A.2d 770 (Pa. Super. 1986), for the proposition that the evidence was "insufficient to support a conviction of REAP where the defendant fired a single gunshot away from the direction of other people and into a wooded hillside"). However, discharging a firearm near another person or in a manner where the projectile could have struck a person is sufficient to prove REAP. *Headley*, 242 A.3d at 944.

As we concluded above, based on the totality of the circumstances, the evidence established that Appellant fired a gun from the window of a car. The record reveals that at the time Appellant fired the gun from the vehicle, he

was in close proximity to a casino, which was open to the public, on a street in the city of Pittsburgh. N.T., 9/15/20, at 9, 15, 36. Moreover, in addition to the danger Appellant posed to the public, there were five additional individuals inside the car who could have suffered serious injury due to Appellant's actions. *Id.* at 17.

After review, we discern no error in the trial court concluding that the evidence was sufficient to prove Appellant guilty of REAP. Although firing the gun by itself is not sufficient, in the case at bar, the evidence established that Appellant fired a gun outside of a casino, on a public street in the city of Pittsburgh, from a vehicle occupied by five other people. Appellant fired the gun in a manner that a projectile could have struck someone, and the evidence summarized above is sufficient to prove REAP. *See Headley*, 242 A.3d at 944.

For the reasons stated above, and pursuant to our well-settled standard of review, *see Nellom*, 234 A.3d at 700, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that Appellant committed the crimes of carrying a firearm without a license and REAP. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/12/2021