J-S24028-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN SCOTT BROWN | : | |
| | : | |
| Appellant | : | No. 1490 WDA 2023 |

Appeal from the Judgment of Sentence Entered July 5, 2023
In the Court of Common Pleas of McKean County
Criminal Division at No(s): CP-42-CR-0000542-2019

BEFORE: BOWES, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.: **FILED: DECEMBER 24, 2024**

Kevin Scott Brown ("Brown") appeals *nunc pro tunc* from the judgment of sentence imposed after a jury found him guilty of involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, corruption of minors, and indecent assault[1] for sexually assaulting two minor victims, A.R. and K.C.[2] We affirm but remand for a correction of the record.

In 2019, after police received a ChildLine report of abuse and the Children's Advocacy Center ("CAC") conducted forensic interviews of A.R. and K.C., Pennsylvania State Police Trooper Neil Ginther ("Trooper Ginther") filed

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 3123(b), 3124.1, 3122.1(b), 6301(a)(1)(ii), 3126(a)(7).

[2] Brown, the trial court, and the Commonwealth each use different initials when discussing A.'s last names. We use "A.R." as it was used in the complaint and in Brown's brief.

a complaint charging Brown with the above-stated offenses. ***See*** N.T., 5/18/21, at 113-14. At the time of Brown's jury trial, A.R. was ten years old. ***See id***. at 19. A.R. testified that she knew Brown. ***See id***. at 20. A.R. began living with Brown and his wife, Carolyn ("Carolyn"), when she was six years old. ***See id***. at 20-21, 140. K.C. would also occasionally stay there overnight.[3] ***See id***. at 21.

A.R. testified Brown abused her from when she was six years old until she was nine years old. ***See id***. at 36. A.R. described how Brown had "cream stuff" and two "vibrator things," one pink and one blue, in his "dresser drawer." ***Id***. at 24-26. Brown would put the vibrators "in [her] back and front . . .[,]" turn the battery on, and she would feel them "tinging." ***Id***. at 27-30. When asked what she meant about her "back" and "front," A.R. indicated she meant her private parts used to "pee" and "poop." ***Id***. at 26-27. A.R. also described other abuse including how he put his tongue in her ear, in her mouth, and in her "front." ***See id***. at 29-30. A.R. also referred to Brown putting his privates in her private parts. ***See id***. at 27-28, 42.

A.R. testified the abuse with the vibrators always occurred in Brown's upstairs bedroom but indicated there were times when the abuse occurred on a downstairs couch when she was sleeping. ***Id***. at 30, 40-43. She identified a photograph as showing Brown's bedroom. ***See id***. at 32; Commonwealth's Ex. 1. A.R. identified another photograph as the set of drawers, next to the

---

[3] A.R. and K.C. are Carolyn's great-nieces. ***See*** N.T., 5/18/21, at 140-41.

- 2 -

bed, where Brown would get the vibrators. *See* N.T., 5/18/21, at 34-35; Commonwealth's Ex. 2. The Commonwealth showed the jury photographs of the pink and the blue vibrators found inside those drawers. *See* N.T., 5/18/21, at 116-20; Commonwealth's Exs. 7 & 8.

A.R. testified Brown told her he would buy her a tablet and a phone if she allowed the abuse, and he did not want her to tell anyone about the abuse because he would go to jail, and lose Carolyn and the children. *See* N.T., 5/18/21, at 27, 33. A.R. stated that when she was seven years old, she told Carolyn about the abuse on two occasions, but Carolyn did not believe her. *See id*. at 33, 39. A.R. described how, on one of those occasions, Brown initially held her back from going downstairs to talk to Carolyn, but then let her go. *See id*. at 33. When A.R. went downstairs and told Carolyn, Carolyn pulled her by the hair and locked her in a room with the dog. *See id*.[4]

At the end of the Commonwealth's direct examination of A.R., the Commonwealth asked A.R. to make an in-court identification of Brown, and the following exchange occurred:

Q.    . . . And the person, [Brown], that you've been telling us about, is he in this courtroom somewhere?

A.    No.

Q.    No, okay.

_____

[4] We note that Carolyn testified at trial as a defense witness. She explained the vibrators were hers and confirmed they were kept in the dresser by the bed. *See* N.T., 5/18/21, at 145-47. She was unaware that A.R. ever saw them. *See id*. at 151-52. Carolyn stated A.R. never told her about any problems with Brown. *See id*. at 142. Brown elected not to testify at trial.

Did you look around the whole room?

A.    No.

Q.    No.

Do you not want to look around the room?

A.    No.

*Id*. at 36.

The Commonwealth also called K.C. to testify at trial. K.C. was seven years old at the time. ***See id***. at 53. K.C. denied knowing an "Uncle Kevin," but she knew "Kevin," with whom she would stay, whose wife was "C.," and who had a dog. *Id*. at 55-56. Using A.R.'s first name, but calling her an "aunt and friend," K.C. stated A. would also be at the house. ***See id***. at 57. When asked about what happened with "Kevin," K.C. ultimately replied, "Nothing." *Id*. at 57-58. The Commonwealth did not ask K.C. to make an in-court identification of Brown.

Pursuant to a pretrial ruling not at issue in this appeal, the Commonwealth played a video recording of K.C.'s CAC forensic interview. ***See id***. at 59-62, 70-71; ***see also*** CD labeled A.2 at 17:00-27:53.[5] During the

_____

[5] The trial transcripts do not contain a transcription of K.C.'s CAC forensic interview. The record contains the trial exhibit of the interview, a CD marked as Commonwealth's Exhibit 3, but the file in Exhibit 3 is copied in an unplayable format. Nevertheless, the record contains a second CD, labeled A.2, containing the full video of the interview. Additionally, there is a transcript of the K.C.'s full interview, which was included as an exhibit to a sexually violent predator assessment. For the purpose of our review, we refer
*(Footnote Continued Next Page)*

interview, K.C. indicated "Uncle K.K. licked her bird" over her pants, pointed at her crotch, stated her "bird" was for the "yellow" kind of "potty," and described how this occurred when she and "Uncle K.K." were on a bed under a black blanket. *See* CD labeled A.2 at 17:00-27:53; *see also* N.T., 5/18/21, at 179.

The jury convicted Brown of involuntary deviate sexual intercourse, sexual assault, corruption of minors, and indecent assault of A.R., and corruption of minors and indecent assault of K.C. On June 2, 2022, the trial court sentenced Brown to serve an aggregate term of twelve to twenty-four years of imprisonment followed by three years of probation. On July 5, 2022, the court amended the sentence to include the costs of prosecution. The trial court determined Brown was a sexually violent predator. After Brown's former counsel failed to file an appeal, Brown filed a Post Conviction Relief Act petition,[6] upon which the court appointed present counsel and granted Brown leave to file an appeal *nunc pro tunc*. Present counsel timely filed an appeal *nunc pro tunc* from the order amending the sentence, and both Brown and the trial court complied with Pa.R.A.P. 1925.

Brown raises the following issues for review:

---

to the unedited video of the interview to the extent it matches the references to Commonwealth's Exhibit 3 at trial.

[6] *See* 42 Pa.C.S.A. §§ 9541-9546.

1. Whether the Commonwealth presented insufficient evidence on the issue of identity to support the verdicts as to each count of which [Brown] was convicted . . . ?

2. Whether the Commonwealth presented insufficient evidence to support the verdicts as to each of the charges pertaining to purported victim K.C., . . . corruption of minors and . . . indecent assault, respectively?

3. Whether the Commonwealth presented insufficient evidence to support the verdict as to . . . sexual assault, as to . . . A.R.?

Brown's Brief at 4.

All three of Brown's issues implicate the sufficiency of the evidence.

Pertinently,

[w]e review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[ ]finder to find every element of the crime beyond a reasonable doubt. Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact[ ]finder.

***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017) (citations and quotation marks omitted). When conducting a sufficiency analysis, an appellate court considers all evidence actually received at trial and does not review a diminished record. ***See Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011).[7]

_____

[7] As outlined below, Brown's arguments ignore our standard of review. Brown focuses on narrow portions of the record, ignores all evidence received at trial, including circumstantial evidence, and highlights the evidence in a light more
*(Footnote Continued Next Page)*

In his first issue, Brown contends the evidence was insufficient to sustain the jury's findings that he committed any of the offenses against A.R. or K.C. It is well settled that in any prosecution, the Commonwealth must establish the identity of the defendant as the perpetrator of the offenses beyond a reasonable doubt. ***See Commonwealth v. Smyser***, 195 A.3d 912, 915 (Pa. Super. 2018). Generally, any indefiniteness or uncertainty in the identification evidence goes to the weight, not the sufficiency, of the evidence. ***See Commonwealth v. Orr***, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*). As with any element of an offense, the Commonwealth may sustain its burden of proving the defendant's identity as the perpetrator of the offenses by circumstantial evidence. ***See Smyser***, 195 A.3d at 915.

Brown asserts the Commonwealth failed to prove he committed the offenses against A.R. and K.C. because neither A.R. nor K.C. identified him in court as the person who committed the offenses. ***See*** Brown's Brief at 13. Brown argues Trooper Ginther's testimony identifying him in court was the only evidence linking him to the offenses, but the trooper had no firsthand knowledge to identify him as the perpetrator of the offenses. ***See id***. Brown adds that Carolyn, the only other witness with firsthand knowledge, denied having any reason to believe the abuse occurred. ***See id***. at 13-14.

_____

favorable to himself than the Commonwealth as the verdict winner. We note we could deem Brown's issues waived based on his failure to set forth a proper challenge to the sufficiency of the evidence. ***Cf. Commonwealth v. Sexton***, 222 A.3d 405, 416 (Pa. Super. 2019). However, we will review his arguments as they have been addressed on the merits by the trial court and the Commonwealth.

The trial court considered and rejected this issue. The trial court reasoned the trial record, when viewed in its entirety, contained sufficient evidence identifying Brown as the "he" or "Kevin," who, A.R. testified, perpetrated the offenses against her, and as the "Uncle K.K.," who, K.R. stated, perpetrated the offenses against her. *See* Trial Ct. Op., 1/23/24, at 3-8.

Following our review, we discern no merit to Brown's argument. Although neither A.R. nor K.C. identified Brown in court, direct identification evidence is not required. *See Smyser*, 195 A.3d at 915. Here, as noted by the trial court, there was sufficient circumstantial evidence establishing Brown's identity as the perpetrator of the offenses. A.R. testified she knew "Kevin Brown," and he "was the one who did stuff to us" at his home. *See* N.T., 5/18/21, at 20-22. A.R. identified a picture of Brown's bedroom, where the majority of the assaults took place, and identified a picture of the dresser next to the bed where he kept the pink and blue vibrators. *See id*. at 31-32, 34-35. The investigation confirmed A.R.'s descriptions of the vibrators and the location of the vibrators. *See id*. at 116-20; Commonwealth's Exs. 7 & 8. Moreover, A.R. testified Brown was married to Carolyn and Brown did not want anyone to know about the abuse because it would end his relationship with Carolyn. *See* N.T., 5/18/21, at 21, 33. Thus, while A.R. may have refused to identify Brown in court, a reasonable jury could conclude Brown was the "Kevin Brown" who committed the offenses against A.R.

As to K.C., we reiterate she was seven years old at the time of trial. *See id*. at 53. She denied knowing an uncle named Kevin. See id. at 56. However, she testified she knew a "Kevin" and would go to his house, where he lived with dog and his wife, "C." *Id*. at 55-56. K.C. would stay at this home with A.R. *See id*. at 56-57. After K.C. testified that nothing happened with "Kevin," the Commonwealth played K.C.'s CAC forensic interview, wherein she stated "Uncle K.K." "licked her bird" when they were on a bed underneath a black blanket. *See* CD labeled A.2 at 17:00-27:53; *see also* N.T., 5/18/21, at 179.[8] Additionally, A.R. confirmed K.C. would occasionally stay at Brown's house, and, when asked if she ever saw anything happen to K.C., A.R. replied, "Only a little bit because she wasn't up there a lot of time . . . because of what he did to her." *See* N.T., 5/18/21, at 21, 34. Again, viewing the entire record in a light most favorable to the Commonwealth, we conclude there was sufficient circumstantial evidence linking K.C.'s statements that "Uncle K.K." "licked her bird" to Brown.

For these reasons, we conclude the Commonwealth presented sufficient evidence identifying Brown as the perpetrator of the offenses against A.R. and K.C. Thus, Brown's first issue fails.

---

[8] On the full video of K.C.'s CAC forensic interview, K.C. also stated that the abuse occurred in a bedroom when "A.," referring to A.R.'s first name, was in the room using the computer. K.C. also described how the computer was on "K.K.'s desk" near "Kellen's" bed. This description of location of the desk and bed is consistent with the photograph of Brown's bedroom. *See* Commonwealth's Ex. 1.

In his second issue, Brown asserts the evidence was insufficient to sustain the offenses of indecent assault and corruption of minors as to K.C. Brown does not argue the Commonwealth failed to meet its burden of proof as to any specific element. Instead, he asserts there was no testimony he had any sexual contact with K.C. and therefore could not be found guilty of indecent assault or corruption of minors. *See* Brown's Brief at 16. Brown notes K.C.'s failure to testify against him at trial, and he argues A.R.'s testimony she only saw him do "stuff" to K.C. was too vague to convict him of assaulting K.C. *See id*.

As the trial court correctly observed, K.C.'s CAC forensic interview was played for the jury and contained sufficient evidence to convict Brown. *See* Trial Ct. Op., 1/23/24, at 9. As discussed above, K.C.'s CAC forensic interview established Brown licked K.C.'s "bird." *See* CD labeled A.2 at 17:00-27:53; *see also* N.T., 5/18/21, at 179. Thus, Brown's argument merits no relief.

In his third issue, Brown challenges the sufficiency of the evidence he committed sexual assault against A.R.

Sexual assault is defined as

> Except as provided in section 3121 (relating to rape) or 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent.

18 Pa.C.S.A. § 3124.1.

Brown asserts the Commonwealth failed to present evidence the "encounters" between him and A.R. were not consensual. **See** Brown's Brief at 17. He contends section 3124.1 is not a specific age-based offense allowing a jury to presume A.R. was too young to consent. **See id**. at 17-18. He argues the Commonwealth, therefore, was required to present additional evidence, independent of A.R.'s age, to establish her lack of consent. **See id**. at 17-18.

The trial court found this issue meritless, concluding that a reasonable jury could conclude A.R. did not consent to the abuse **See** Trial Ct. Op., 1/23/24, at 11. The trial court summarized the evidence with respect to A.R. and reasoned the jury was free to consider: (1) A.R. testified Brown, at times, abused her when she was sleeping; (2) Brown, when using the vibrators, told A.R. to sit still; (3) A.R.'s young age at the time of the abuse; (4) Brown's use of emotional pressure to conceal the abuse from Carolyn; and (5) Carolyn's failure to believe A.R. when A.R. report the abuse. **See id**. at 10-11.

Following our review, we agree with the trial court. The lack of consent is an element of sexual assault and must be proven by the Commonwealth beyond a reasonable doubt. **See Commonwealth v. Prince**, 719 A.2d 1086, 1090 (Pa. Super. 1998). However, nothing in the text of sexual assault statute, the canons of statutory interpretation, requires a jury, or an appellate court, to disregard the victim's age when determining her lack of consent. Common sense dictates that a young child of six to nine years of age should not be expected to know the nature and implications of sexual contact by an

adult. *Cf. Commonwealth v. Rhodes*, 510 A.2d 1217, 1228 (Pa. 1986). In any event, the record belies Brown's claim that the Commonwealth failed to present any evidence that A.R. did not consent. Brown told A.R. to "sit still" when abusing her with the vibrators, promised her phones and tablets "if [she] let him" abuse her, and abused her when she was sleeping on the couch in the living room. *See* N.T., 5/18/21, at 27, 40. When she was seven years old, A.R. told Carolyn about the abuse despite Brown's insistence she not tell. *See id*. at 33, 39. However, Carolyn did not believe her and instead pulled her by her hair and locked her in a room with the dog. *See id*. at 33. Thereafter, Brown continued to abuse A.R. until she was nine years old. *See id*. at 33, 36. Based on this record, there was sufficient evidence for the jury to find A.R. did not consent to the sexual intercourse or deviate sexual intercourse Brown perpetrated against her. Accordingly, Brown's third issue challenging his conviction for sexual assault fails.

Lastly, although not raised by Brown, we are compelled to note the record and docket reflect the corruption of minors offense as to K.C. is improperly graded as a felony under section 6301(a)(1)(ii). *See Commonwealth v. Nellom*, 234 A.3d 695, 704-05 (Pa. Super. 2020) (concluding, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), a jury's verdict required grading the corruption of minors as a second-degree misdemeanor, not a third-degree felony); *accord Commonwealth v. Mendozajr*, 71 A.3d 1023, 1027 (Pa. Super. 2013) ("A claim that the court improperly graded an offense for sentencing purposes implicates the legality

of a sentence") (citation omitted). As this Court has stated, the commission of a single sexual act against a minor does not constitute a course of conduct in violation of Chapter 31 to support a felony conviction of corruption of minors under subsection (a)(1)(ii); but, the single act will suffice to sustain a lesser-included misdemeanor conviction under subsection (a)(1)(i). **See Kelly**, 102 A.3d at 1032. Here, the jury specifically found Brown did **not** engage in a course of conduct as to K.C. **See** N.T., 5/18/21, at 221-22. Therefore, his conviction with respect to K.C. must be graded as a first-degree misdemeanor under subsection (a)(1)(i). **See Nellom**, 234 A.3d at 704; **Kelly**, 102 A.3d at 1032. Because the sentence on this count (count 7) did not exceed the maximum sentence for a first-degree misdemeanor, **see** N.T., 6/2/22, at 13 (imposing a term of imprisonment of one to two years of imprisonment on count 7), we need not remand for resentencing. However, we will remand for the sole purpose of permitting a correction of the record and docket to reflect that count 7 constitutes a first-degree misdemeanor, not a third-degree felony.

Judgment of sentence affirmed. Case remanded to correct the record as to count 7 consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/24/2024