J-S03026-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUSTIN MICHAEL BURKS | : | |
| | : | |
| Appellant | : | No. 526 MDA 2025 |

Appeal from the Judgment of Sentence Entered December 19, 2024
In the Court of Common Pleas of Huntingdon County Criminal Division at
No(s):  CP-31-CR-0000246-2022

BEFORE:  DUBOW, J., BECK, J., and LANE, J.

MEMORANDUM BY BECK, J.:                    **FILED MARCH 17, 2026**

Justin Michael Burks ("Burks") appeals from the judgment of sentence imposed by the Huntingdon County Court of Common Pleas ("trial court") following his convictions of one count each of aggravated indecent assault – complainant less than thirteen years of age, indecent assault – complainant less than thirteen years of age, and corruption of minors.[1]  On appeal, Burks challenges the weight of the evidence supporting each of his convictions and the discretionary aspects of his sentence.  We affirm.

Burks' convictions arise from sexual assaults that he committed upon M.M. when she was approximately eleven years old.  N.T., 9/16/2024, at 31.  M.M. and Burks met through M.M.'s mother, S.M. ("Mother"), who was seeing

---

[1] 18 Pa.C.S. §§ 3125(a)(7), 3126(a)(7), 6301(a)(1)(i).

Burks casually for a few years.[2]  *Id.* at 30.  In the beginning of M.M.'s relationship with Burks, they would communicate on Snapchat[3] with one another.  *Id.* at 31-32.  Their relationship quickly shifted, however, when Burks began pressuring M.M. to send him nude pictures of herself.  *Id.* at 32-33.  At one point, M.M. attempted to stop the exchange of photos, but Burks threatened M.M. that Mother would never believe her if she attempted to tell the truth.  *Id.* at 33.  M.M. stated she chose not to tell Mother because Mother "kind of always put men and drugs before me."  *Id.* at 34; *see id.* at 40 (noting Mother had a history of alcohol and drug abuse).

On the night of the assault at issue, Mother and J.S. argued, after which Mother and M.M. packed their clothes, got into Mother's car, and drove to pick up Burks.  *Id.* at 35-36, 66.  The three then drove to a house owned by a relative of Burks.[4]  *Id.* at 36, 67.

After arriving at the home, Burks engaged in two separate sexual acts with M.M.  *Id.* at 36, 42-43.  The first occurred in a pool while M.M. and Burks were swimming.  *Id.* at 36.  Burks moved to stand directly behind M.M. and "reached his hand down" and began touching her vaginal area.  *Id.*  Burks

---

[2]  At that time, Mother was married to a different man, J.S.  N.T., 9/16/2024, at 32, 66.

[3] Snapchat is a social media application where individuals can send photos, videos, or chats to another user.

[4] While M.M. and Mother believed the home belonged to Burks' uncle, it was actually owned by Burks' cousin.  *See* N.T., 9/16/2024, at 91.

then made M.M. touch his penis. *Id.* Burks' touching stopped for a short period when Mother came down to the pool. *Id.* However, after Mother left, Burks took M.M.'s bathing suit bottoms off and eventually "had his penis out and was making [her] touch it." *Id.* During the first series of events, M.M. stated that she could not prevent the assault from happening because Mother had already started drinking prior to the assault occurring. *Id.* at 39-40.

Once M.M. was out of the pool, Burks wrote M.M. a note asking, "how long would you want to kiss me?" *Id.* The note contained answers "short" or "long," and M.M. was prompted to circle one. *Id.* at 41. M.M. picked "short." *Id.* M.M. and Burks then went to the living room to watch a movie and Burks brought her a drink. *Id.* at 41-42. After consuming the drink, M.M. recalled feeling "extremely tired" and that she "had never felt that tired before." *Id.* M.M. went to a bedroom with bunk beds and remembered getting into the top bunk. *Id.* Burks followed M.M. into bed, began kissing her and resumed the same touching that had occurred in the pool. *Id.* at 42. M.M. testified she was unsure how long the touching continued before she fell asleep. *Id.* at 42-43.

Mother and M.M. left the home when Mother had awoke in the middle of the night to Burks' relative attempting to assault her. *Id.* at 43-44. M.M. did not tell Mother of Burks' conduct at this time, noting that Mother, "made it all about her…. That's what it always was…. I couldn't really speak up for myself." *Id.* at 44.

M.M. had no further contact with Burks. *Id.* Several years later, when M.M. was in high school, she told a school guidance counselor about the assaults. *Id.* at 45. M.M. testified that she went to the guidance counselor for support after being accused of raping a classmate at a party, and "it all just kind of came out." *Id.* After she told the guidance counselor, M.M. told her stepmother, father, and Mother. *Id.*

Police arrested Burks and the Commonwealth charged him with two counts each of the aforementioned crimes—one set for the assault that occurred in the pool and one for the assault that occurred in the bedroom. The case proceeded to a jury trial, at which M.M., Mother, and a criminal investigator from the Pennsylvania State Police, Trooper Paul Brenneman, testified. The jury found Burks guilty of one of each of the counts, and not guilty of the second set of charges. The verdict slip did not indicate whether Burks' conviction stemmed from what occurred in the pool or in the bedroom.

The trial court deferred sentencing pending the completion of a presentence investigation report. On December 19, 2024, the trial court sentenced Burks to four to eight years of incarceration for aggravated indecent assault – complainant less than thirteen years of age and three to six months incarceration indecent assault – complainant less than thirteen years of age, to be served concurrently.

Burks filed a timely post-sentence motion, asserting that his convictions were against the weight of the evidence and challenging the discretionary

aspects of his sentence. The trial court denied the motion. He timely filed the instant appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On appeal, Burks presents the following issues for review:

1. Whether the guilty verdicts with respect to the aggravated indecent assault (F2), the indecent assault (M1), and corrupting the morals of minors (M1) convictions were against the weight of the evidence in that there was a lack of prompt complaint by the complaining witness without any type of reasonable explanation for the delay; that the belated claims of purported sexual abuse by [], [] Burks were made in response to allegations that the complaining witness herself had committed a sexual assault; that there is no supporting physical or medical evidence or proof of any alleged sexual assault; that the prosecution failed to produce a putative handwritten note, which supposedly invited the complaining witness to kiss him on the night in question; that the complaining witness made several inconsistent statements and many of her statements about the alleged acts and details were wholly contradicted by the prosecution's own witnesses; and the undoubtedly reality that the complaining witness conflated the identity of [] Burks with other individuals, who were her likely assailant especially in context of a split guilty/not guilty verdict in which the specific alleged indecent assault of which [] Banks was convicted cannot be positively identified?

2. Whether the trial court abused its discretion in imposing an aggregate sentence of total confinement in a state prison for four [] to eight [] years in that said sentence was manifestly unreasonable and excessive, arbitrary, and capricious under the circumstances in that it was inconsistent with the protection of the pubic, the gravity of the offense as it related to the impact on the life of the victim and on the community, and the rehabilitative needs of [] Burks in that his overall sentence deviated from the fundamental norms of the Sentencing Code by focusing on punishment to the exclusion of the rehabilitation needs of [] Burks?

Burks' Brief at 8-9 (unnecessary capitalization omitted).

## Weight of the Evidence

In his first claim, Burks contends that each of his convictions were against the weight of the evidence presented at trial. *Id.* at 30-39. He argues that M.M. alleged two separate acts occurred, but the jury's verdict was unclear which event Burks was convicted of, and that this inconsistency supports his weight of the evidence claim. *Id.* at 31. Burks contends that it was more likely the jury convicted him of the bedroom charges but acquitted him of the pool charges, as "the alleged illegal contact occurred in open public while two [] other adults including M.M.'s mother were positioned at an elevated level with a clear vantage point from which they were able to plainly see everything that was happening down by the pool." *Id.* at 32. By contrast, he observes that at the hearing on his post-sentence motion, the Commonwealth stated its belief that the jury acquitted him of the bedroom charges, thus "conceding the relative weakness of that latter charge." *Id.* at 31, 38.

Burks further asserts that M.M.'s testimony was not believable. *Id.* at 33. He claims the trial court did not give due weight to the absence of a prompt complaint, noting M.M. did not come forward with details about the assault "until it became convenient for M.M. to play the role of the victim." *Id.* at 34; *see also id.* at 36. Burks adds that M.M.'s failure to come forward soon after the assault also "heightens the prospect that M.M. is misremembering or conflating false realities," as Mother was also assaulted

on the night in question and told Burks about it immediately. *Id.* at 35. He further argues that M.M. had a past history of promptly reporting assault claims against Mother's other paramours. *Id.* at 37. Finally, Burks claims M.M. made numerous inconsistent statements, which is particularly concerning because "there were no corroborating witnesses, no supporting contemporaneous evidence, and/or confirming medical evidence." *Id.* at 38.

The following legal principles apply to a trial court's consideration of a challenge to the weight of the evidence supporting a conviction:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence, does not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> Thus, to allow an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the trial court.

*Commonwealth v. Juray*, 275 A.3d 1037, 1046-47 (Pa. Super. 2022) (quotation marks and citations omitted).

Our review of weight of the evidence claims, however, differs significantly:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict

is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 1047 (citation omitted).

Here, the trial court rejected Burks' weight claim, finding Burks' argument merely amounted to a reassessment of M.M.'s credibility. Trial Court Opinion, 4/7/2025, at 16-18. The court found Burks' arguments not only weak, but "unpalatable … based solely on suspicions, prejudices, and biases against victims of sexual assault that have long been disproven." *Id.* at 16-17. It rejected Burks' argument related to "prompt complaint," referencing M.M.'s clear trial testimony, including her troubled relationship with her Mother, M.M's own failure to understand what had occurred between herself and Burks, and a fear of creating a "wedge" between Burks and her Mother at the time of the incident. *Id.* at 16-17. The trial court found his arguments "are based on discredited beliefs and suspicions, and veer into the realm of victim blaming." *Id.* at 18. In addressing Burks' assertion regarding the absence of physical evidence, the court noted this was "not essential evidence necessary to establish an element of the offenses of which [Burks] was convicted." *Id.* at 17-18. Finally, the court concluded that there was no record support that M.M. misidentified Burks as her assailant or that she

concocted her allegations of abuse "in light of the strength of M.M.'s testimony." *Id.* at 18.

We conclude that the trial court did not abuse its discretion in rejecting Burks' challenge to the weight of the evidence. At base, Burks seeks for this Court to reweigh the evidence in his favor, but it is the jury, and not this Court, who serves as the arbiter of credibility, and is free to believe or disregard any part of a witness' testimony. *See Commonwealth v. Clemons*, 200 A.3d 441, 464 (Pa. 2019). Indeed, the jury considered the evidence presented at trial and rendered the guilty verdicts, which the trial court found was supported by the evidence presented. This conclusion finds ample record support, as M.M. revealed an inappropriate, manipulative, and intimate sexual relationship with Burks. *See Commonwealth v. Diaz*, 152 A.3d 1040, 1047 (Pa. Super. 2016) (finding the trial court did not abuse its discretion in denying a weight challenge where the uncorroborated testimony of a sexual assault victim was found credible by the trier of fact); *Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact") (citation omitted). Further, and contrary to Burks' claims, there was no evidence to suggest M.M. misidentified Burks or concocted the abuse allegations. Finally, the lack of corroborating physical evidence does not undermine M.M.'s credible testimony because it fell within the province of the

jury to determine the weight to be placed upon the testimony that was presented. *See Diaz*, 152 A.3d at 1047.

We therefore find no abuse of discretion in the trial court's denial of Burks' weight challenge. *See Commonwealth v. Gilliam*, 249 A.3d 257, 270 (Pa. Super. 2021) (concluding that the trial court did not abuse its discretion in denying appellant's weight of the evidence challenge where he merely asked this Court to assume the role of factfinder and reweigh the evidence in his favor).[5] Burks' first claim therefore fails.

_____

[5] Furthermore, Burks' argument concerning the verdict slip does not entitle him to relief. To the extent he challenges the failure of the verdict slip to specifically identify the charges for which he was found guilty, this does not constitute a weight claim, but a challenge to the verdict slip itself. To preserve such a claim, he had to contemporaneously object to the verdict slip, which he failed to do, resulting in waiver. *See Commonwealth v. Nellom*, 234 A.3d 695, 704 (Pa. Super. 2020) (holding that a failure to contemporaneously object to a verdict slip operates as a waiver). Indeed, even after the jury specifically asked a question as to which location supported each of the counts and the trial court stated it could not provide any clarity as it would be substituting its judgment for the jury, Burks raised no objection. N.T., 9/16/2024, at 126-27. Nor did Burks seek any further information from the jury once it rendered its verdict. *Id.* at 128-29.

Moreover, that the jury acquitted him of one set of charges but convicted him of another when both sets of charges were based upon the same testimony by the same witness is of no moment. There are myriad reasons why the jury may have reached the decision it did; inconsistent verdicts routinely occur and generally are not subject to reversal on appeal. *See, e.g., Commonwealth v. Widger*, 237 A.3d 1151, 1160 (Pa. Super. 2020) ("inconsistent verdicts are generally not reviewable because such an individualized assessment of the reason for the inconsistency either would be based on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake") (cleaned up). In the absence of a specific interrogatory on the verdict slip or some other indication

*(Footnote Continued Next Page)*

## Discretionary Aspects of Sentencing

Burks next argues that the trial court abused its discretion in imposing an excessive sentence, without considering his mitigating factors and rehabilitative needs. Burks' Brief at 40-43. In so arguing, he challenges the discretionary aspects of his sentence. *See Commonwealth v. Riggs*, 63 A.3d 780, 786 (Pa. Super. 2012) (a claim that a sentence is excessive and manifestly unreasonable because the trial court failed to consider all relevant sentencing factors is a challenge to the discretionary aspects of sentencing).

There is "no absolute right to appeal when challenging the discretionary aspect of a sentence." *Commonwealth v. Crump*, 955 A.2d 1280, 1282 (Pa. Super. 2010). To invoke this Court's jurisdiction, Burks must satisfy the following four-part test:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of her appeal pursuant to Pa.R.A.P. 2119(f); (4) the appellant raise a substantial question for our review.

---

of the basis for the jury's decision, we disagree that we can read anything into the partial acquittal as it pertains to the strength or weakness of the Commonwealth's case as to either set of charges. *See id.* at 1161 (appellant's conviction of aggravated indecent assault of a child under thirteen is not subject to reversal based upon his acquittal of indecent assault of a child under thirteen; "[w]hether the jury's verdict was the result of mistake, compromise, lenity, or any other factor is not a question for appellate courts to review") (cleaned up).

*Commonwealth v. Rivera*, 312 A.3d 366, 376-77 (Pa. Super. 2024) (citation and brackets omitted).

A substantial question is determined on a case-by-case basis and exists "only when the appellant advances a colorable argument that the sentencing judge's actions were wither: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms with underly the sentencing process." *Commonwealth v. McCain*, 176 A.3d 236, 240 (Pa. Super. 2017). A "substantial question determination does not require the court to decide the merit of whether the sentence is clearly unreasonable." *Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013).

Burks filed a timely appeal and preserved his claim in a post-sentence motion. Burks' brief also contains a Rule 2119(f) statement, wherein he contends that the trial court imposed an excessive sentence without properly considering mitigating factors and rehabilitative needs. This raises a substantial question. *See Commonwealth v. Swope*, 123 A.3d 333, 339 (Pa. Super 2015) (stating that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question") (citation omitted); *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (en banc) (finding a claim that the trial court imposed an excessive sentence without properly considering the defendant's rehabilitative needs presents a substantial question).

Turning to address the merits of Burks' argument, our standard of review is well established:

> Imposition of sentence is vested in the discretion of the sentencing court and will not be disturbed by an appellate court absent a manifest abuse of discretion.  An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.  To constitute an abuse of discretion, a sentence must either exceed the statutory limits or be…manifestly excessive.

*Commonwealth v. Hunzer*, 868 A.2d 498, 514 (Pa. Super. 2005) (citations and quotation marks omitted).  In addition to the abuse of discretion standard, our review is confined by section 9781(c) and (d) of the Sentencing Code:

> **(c) Determination on appeal.--**The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> > (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
> >
> > (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
> >
> > (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.
>
> In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.
>
> **(d) Review of record.--**In reviewing the record the appellate court shall have regard for:
>
> > (1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(c), (d).

If the trial court was informed by a presentence investigation report, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed."[6] *Commonwealth v. Miller*, 275 A.3d 530, 535 (Pa. Super. 2022); *see also Commonwealth v. Rhoades*, 8 A.3d 912, 919 (Pa. Super. 2010) (noting that where "the sentencing court had the benefit of a pre[]sentence investigation report, we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors") (citation and quotation marks omitted).

Burks contends that the trial court abused its discretion in imposing the sentence because it was "inconsistent with the protection of the public, the gravity of the offense as it related to the impact of the life of the victim and

---

[6] The sentencing factors include "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). "The balancing of these [s]ection 9721(b) sentencing factors is within the sole province of the sentencing court." *Commonwealth v. Baker*, 311 A.3d 12, 19 (citation omitted).

on the community, and the rehabilitative needs of [Burks]." Burks' Brief at 40. Further, Burks asserts that the trial court should have considered his extensive history of alcohol abuse and its implications on the alleged assault of M.M. *Id.* at 40. Burks states that he has since achieved sobriety that has allowed him to thrive professionally and become a more present father. *Id.* at 41; *see also id.* (noting the mother of Burks' son indicated Burks is a loving and caring father). According to Burks, the trial court failed to give sufficient weight to his rehabilitative needs. *Id.* at 42, 43.

The record reflects that the trial court considered the presentence investigation report and the sentencing guidelines. N.T., 12/19/2024, at 1, 4, 7; *see also id.* at 1 (noting the standard range for the aggravated indecent assault conviction was thirty-six to forty-eight months in prison). The trial court heard the testimony of witnesses on behalf of Burks, allowed Burks to address the court, and heard arguments from defense counsel that highlighted Burks' strong relationship with his children and his professional achievements. *Id.* at 2-7. The trial court also took into account the protection of the public, the gravity of the offenses, the impact of the crimes on M.M., Burks' criminal history, and his rehabilitative needs. *Id.* at 7-8. Thereafter, the trial court imposed the aggregate sentence of four to eight years in prison. *Id.* at 8-9.

We conclude that the trial court did not abuse its discretion in its sentencing decision. Where, as here, the sentence is within the standard range of the guidelines, "Pennsylvania law views the sentence as appropriate

under the Sentencing Code." ***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa. Super. 2010). Importantly, not only did the trial court have the benefit of a presentence investigation report, as the above summary shows, the trial court considered his mitigating evidence and rehabilitative needs that Burks claims it ignored in fashioning the sentence. ***See Miller***, 275 A.3d at 535; ***Rhoades***, 8 A.3d at 919. Based upon our review of the record, the arguments raised by Burks, and the relevant law, we find no basis to overturn the trial court's sentencing decision. ***See*** 42 Pa.C.S. § 9781(c), (d). Therefore, we conclude Berks is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/17/2026